THE STATE, EX REL. DICKEY-GRABLER COMPANY, APPELLANT,
*v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE, ET AL.

[Cite as *State, ex rel. Dickey–Grabler Co., v. Indus. Comm.* (1992), 63 Ohio St.3d 465.]

(No. 90–2226—Submitted January 7, 1992—Decided April 15, 1992.)

*Crede Calhoun,* for appellant.

*Lee I. Fisher,* Attorney General, *Dennis L. Hufstader* and *Teresa Oglesby-McIntyre,* for appellee Industrial Commission.

---

*Per Curiam.* Appellant challenges the commission's 1983 and 1986 orders for permanent partial disability compensation. Appellant asserts that the awards, as well as the evidence supporting them, violate former R.C. 4123.57, *State, ex rel. Noll, v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245, a 1989 memorandum of the commission to its hearing officers, and the 1988 Medical Examination Manual. Finding appellant's claims persuasive in part, we reverse the court of appeals' judgment in part and affirm it in part.

We initially decline to review the conformity of the awards with the aforementioned commission memorandum or manual. They were not in effect when the 1983 and 1986 orders were issued and are not germane to this controversy.

Moreover, we hold that the court of appeals erred in vacating the 1983 permanent partial disability order. Since there is no evidence that appellant sought reconsideration of that decision, it could not be considered further. *State, ex rel. Bittinger, v. NACCO Mining Co.* (1990), 49 Ohio St.3d 30, 31, 550 N.E.2d 172, 173.

The remainder of appellant's challenge involves the commission's 1986 increase of claimant's permanent partial disability award. Despite getting the relief requested below—vacation of the 1986 order—appellant nonetheless contests the lower court's action, presumably disagreeing with the court's

reasoning. Appellant attacks both the order itself and the evidence supporting it. Only the first challenge has merit.

Looking first to the medical evidence upon which the commission relied, appellant's only valid criticism is that of Dr. Fumich's report. Because Dr. Fumich relies on nonallowed conditions, his report cannot be considered "some evidence" supporting increased permanent partial disability.

Appellant assails the 1985 and 1986 reports of Drs. Fierra and DeMaria, both examining physicians, because the doctors did not indicate that they had compared their findings with those noted by others in 1982 and 1983. Appellant asserts that the comparison is mandatory and accuses the commission of instructing its doctors and hearing officers to ignore the requirement. These claims fail.

No statute requires examining physicians to compare past and present findings. Former R.C. 4123.57(B) (now [A]) prohibited an increase in permanent partial disability absent "medical or clinical findings that the condition * * * has so progressed as to have increased the percentage of permanent partial disability. * * * " Contrary to appellant's representation, this directive does not command the commission to disregard any physician's report that does not make the proposed comparison. Similarly, the language in the commission's 1982 Medical Examination Manual is permissive, not mandatory. Those 1982 guidelines suggest that a comparison may be helpful, but do not order a doctor to make it.

Appellant alternately argues that the comparison, if not specifically mandated, is logically dictated. We disagree for two reasons.

First, we question the amount of relevant information such a comparison yields. An examining doctor is asked to determine the amount of impairment attributable to the allowed conditions *at the time of the examination*. The claimant's earlier symptoms are irrelevant to this determination. This is especially true here. Dr. DeMaria's contested 1985 examination, for example, revealed pain when claimant tried to stand on her heels. In 1983, Dr. Gross found similar pain while Dr. Fumich's 1983 evaluation did not. It is difficult to envision what useful conclusion Dr. DeMaria would be expected to draw from this comparison.

More important, we have repeatedly declined to subject doctors' reports to requirements that, if not followed, automatically disqualify the report from evidentiary consideration. For example, we refused to disqualify reports where a doctor has mistakenly referred to a claimant's "disability" when the balance of the report shows that the doctor really meant "impairment." *State, ex rel. Stephenson, v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 171, 31 OBR 369, 373, 509 N.E.2d 946, 950. We also overruled an earlier decision that

prevented commission consideration in certain situations of reports that addressed only one of several allowed conditions. *State, ex rel. Burley, v. Coil Packing, Inc.* (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936, overruling *State, ex rel. Anderson, v. Indus. Comm.* (1980), 62 Ohio St.2d 166, 16 O.O.3d 199, 404 N.E.2d 153. Most recently, we reaffirmed our prior refusal to disqualify nonexamining physician reports that did not expressly indicate acceptance of earlier medical findings of examining physicians. *State, ex rel. Lampkins, v. Dayton Malleable, Inc.* (1989), 45 Ohio St.3d 14, 542 N.E.2d 1105. See, also, *State, ex rel. Hughes, v. Indus. Comm.* (1986), 26 Ohio St.3d 71, 26 OBR 61, 498 N.E.2d 459. In each case, we stressed the commission's exclusive responsibility to assess the weight and credibility of medical evidence.

Our decision should not be construed as excusing examining physicians from noting their own findings and observations in medical reports. It also does not relieve nonexamining physicians from accepting the prior findings of others before rendering an opinion. We hold only that a failure to compare past and present findings for purposes of permanent partial impairment does not disqualify a report from evidentiary consideration.

We recognize, however, that medical proof alone cannot sustain a permanent partial disability award. Permanent partial disability must encompass both medical and nonmedical disability factors. *Bouchonville, supra.* Permanent partial disability orders must indicate that nonmedical disability factors were evaluated. *Id.*

*Bouchonville* arose from *Stephenson, supra,* which required permanent total disability orders to state that nonmedical factors were evaluated. *Bouchonville* extended the directive to permanent partial disability orders. Unfortunately, commission orders subsequent to *Stephenson* and *Bouchonville* still contained only boilerplate statements that relevant disability factors had been considered.

Recently, *Noll, supra,* declared that boilerplate recitation in permanent total disability orders did not satisfy *Stephenson.* We reiterated the commission's duty to "* * * specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision. An order of the commission should make it readily apparent from the four corners of the decision that there is some evidence supporting it. * * *" *Id.,* 57 Ohio St.3d at 206, 567 N.E.2d at 248.

Logic and consistency dictate that if mere recitation is insufficient for permanent total disability orders, it is inappropriate for permanent partial disability orders as well. In this case, additional explanation is particularly important, given the 1987 affidavit of claimant's supervisor describing claim-

ant as an excellent worker who never complained of back problems while performing her duties. The commission should explain the combination of medical and nonmedical factors that led it to conclude that claimant's *disability, i.e., her inability to work,* had worsened to the extent found.

For the reasons set forth above, we reverse that portion of the court of appeals' judgment which vacated the 1983 order. The balance of the judgment is affirmed and the cause is returned to the commission for further consideration and an amended order that complies with *Bouchonville* and *Noll.*

*Judgment affirmed in part*
*and reversed in part.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.