[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 44.]

THE STATE EX REL. HOLMAN, APPELLEE, *v.* LONGFELLOW RESTAURANT ET AL.; INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

[Cite as *State ex rel. Holman v. Longfellow Restaurant*, 1996-Ohio-429.]

*Workers' compensation—Industrial Commission does not abuse its discretion in basing a permanent partial disability award solely on medical or clinical findings reasonably demonstrable.*

The Industrial Commission does not abuse its discretion in basing a permanent partial disability award solely on medical or clinical findings reasonably demonstrable. (*State ex rel. Bouchonville v. Indus. Comm.* [1988], 36 Ohio St.3d 50, 521 N.E.2d 773; *State ex rel. Johnson v. Indus. Comm.* [1988], 40 Ohio St.3d 384, 533 N.E.2d 775; *State ex rel. Dickey-Grabler Co. v. Indus. Comm.* [1992], 63 Ohio St.3d 465, 588 N.E.2d 849, overruled to the extent that they are inconsistent with this decision.)

(No. 95-405—Submitted March 19, 1996—Decided July 3, 1996.)

APPEAL from the Court of Appeals for Franklin County, No. 94APD02-230.

————————————

{¶ 1} In 1984, appellee-claimant, Wanda Holman, injured her low back in the course of and arising from her employment as a waitress for Longfellow Restaurant. Treatment was conservative and she returned to work three days later. She later became employed as a secretary.

{¶ 2} In 1990, the Bureau of Workers' Compensation awarded claimant permanent partial disability ("PPD") compensation under R.C. 4123.57. In 1992, her claim was additionally allowed for "arthritic changes in L4-5 and L5-S1 area." Claimant then moved appellant Industrial Commission of Ohio for increased compensation for PPD. Among other evidence before the commission was the report of orthopedic surgeon Dr. William G. Littlefield. Dr. Littlefield made very

limited objective findings and assessed a five percent permanent partial impairment as a result of all allowed conditions.

{¶ 3} A district hearing officer found that claimant's disability had not increased and denied further award. A staff hearing officer affirmed on reconsideration, writing:

"The findings and order are based particularly on the medical report(s) of Dr(s) Bleser and Littlefield, a consideration of the claimant's age, education, work history, and other disability factors including application, the evidence of record, the evidence adduced at the hearing, and new and changed conditions."

{¶ 4} Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission had abused its discretion in failing to find that her permanent partial disability had increased. The court of appeals agreed and ordered the commission to reconsider the cause and issue an amended order.

{¶ 5} This cause is now before this court upon an appeal as of right.

_____

*Steve C. Carr*, for appellee.

*Betty D. Montgomery*, Attorney General, and *Diane L. Meftah,* Assistant Attorney General, for appellant.

_____

**Per Curiam.**

{¶ 6} The commission's determination of permanent partial disability purports to include consideration of claimant's nonmedical disability factors. The commission, however, does not seriously dispute the assertion that its award was premised solely upon medical or clinical findings that were reasonably demonstrable. One question is therefore before us: Did the commission abuse its discretion in basing its award solely upon those factors? We find no abuse of discretion for two reasons.

I

{¶ **7**} R.C. 4123.57 read in part:

"The district hearing officer, upon such application, shall determine the percentage of the employee's permanent disability * * * based upon that condition of the employee resulting from the injury or occupational disease and causing permanent impairment evidenced by medical or clinical findings reasonably demonstrable." Former R.C. 4123.57(B), 138 Ohio Laws, Part I, 1727, 1733 (now 4123.57[A]).

{¶ **8**} This statutory passage does not resolve the question posed because it can be interpreted in different ways, as each party's reliance on the statute attests. Claimant argues that the commission is directed to consider permanent <u>disability</u>. She contends that because "disability" represents the effect of injury upon the ability to work (*State ex rel. Stephenson v. Indus. Comm*. [1987], 31 Ohio St.3d 167, 31 OBR 369, 509 N.E.2d 946), nonmedical disability factors must be considered. The commission, on the other hand, counters by referring to the phrase "evidenced by medical or clinical findings reasonably demonstrable." This, according to the commission, is the type of evidence on which the General Assembly wanted the award based, with medical evidence being relevant to the question of impairment.

{¶ **9**} In this instance, we find a review of the statute's history to be particularly instructive. A statutory scheme similar to that at issue first appeared in 1941:

"In all cases of permanent partial disability * * * the industrial commission shall determine the percentage of disability of the employee, after taking into consideration the extent of the physical disability, *the impairment of earning capacity and the vocational handicap of the employee * * *.*" (Emphasis added.) G.C. 1465- 80(b) as amended by 119 Ohio Laws 565, 570.

**{¶ 10}** Soon thereafter, the language emphasized above was deleted and the commission was directed to simply determine "the percentage of disability resulting from the injury."  122 Ohio Laws 268, 270.

**{¶ 11}** In 1955, the statute was again amended:

"The determination of the employee's permanent physical disability shall be based upon that pathological condition of the employee resulting from the injury and causing permanent physical impairment evidenced by medical or clinical findings reasonably demonstrable. * * *"  R.C. 4123.57(B) as amended by 126 Ohio Laws 1015, 1029.

**{¶ 12}** In 1959, more changes were made:

"[T]he industrial commission shall determine the percentage of disability of the employee, after taking into consideration the extent of the phsyical [*sic*] disability, *the impairment or [sic] earning capacity and the vocational handicap of the employee * * *.*"  (Emphasis added.)  128 Ohio Laws 743, 758.

**{¶ 13}** Finally, in 1963, a version virtually the same as that which controls today was enacted.  130 Ohio Laws 926-927.

**{¶ 14}** Two things are suggested by R.C. 4123.57's many changes.  At a minimum, they undermine claimant's assertion that the General Assembly <u>clearly</u> intended to include nonmedical disability factors in a PPD determination.  To the contrary, the conspicuous omission of nonmedical language from the statute's final version implies that the legislature indeed intended to remove nonmedical factors from the PPD equation.

**{¶ 15}** Second, mindful of the frequency with which "impairment" and "disability" have been interchanged in the past, the reference to permanent disability in this instance is insufficient to establish an intent to have nonmedical factors included.  Our view is reinforced by the 1941 and 1959 versions of the statute.  There, the directive to consider vocational factors would have been redundant if "disability" had been used in the sense that claimant alleges.

4

Consideration of these variables would have been implied by the use of the term "disability."

{¶ 16} We cannot, therefore, find that R.C. 4123.57 compels the commission to include nonmedical disability factors in its PPD assessment.

## II

{¶ 17} We acknowledge at the outset that *State ex rel. Dickey-Grabler Co. v. Indus. Comm.* (1992), 63 Ohio St.3d 465, 588 N.E.2d 849, directed the commission to consider nonmedical disability factors when determining permanent partial disability. Taking this occasion to revisit that decision, we find that the foundation on which it rests does not support inclusion of these factors.

{¶ 18} Several years prior to *Dickey-Grabler*, we observed:

"[A] distinct difference exists between the goals of compensation for partial disability and for permanent and total disability. Although an award for permanent and total disability is generally aimed at compensating for impairment of earning capacity, benefits for partial disability [under former R.C. 4123.57(B)] are more akin to damages for work-related injuries." *State ex rel. Gen. Motors Corp. v. Indus. Comm.* (1975), 42 Ohio St.2d 278, 282, 71 O.O.2d 255, 257, 328 N.E.2d 387, 389.

{¶ 19} This is a principle to which we have continued to adhere. See, *e.g., State ex rel. Consolidation Coal Co. v. Indus. Comm.* (1980), 62 Ohio St.2d 147, 16 O.O.3d 166, 404 N.E.2d 141; *State ex rel. Doughty v. Indus. Comm.* (1991), 61 Ohio St.3d 736, 576 N.E.2d 801.

{¶ 20} While *Gen. Motors* did not address the question currently at issue, it is noteworthy for two reasons. First, its characterization of compensation for partial disability under former R.C. 4123.57 (B) as akin to damages suggests a strictly medical, *i.e.*, impairment-based award for the permanent damage to the body caused by injury. Second, it describes permanent total disability as a form of

impaired earning capacity ("IEC"), and, in so doing, in effect differentiates also between former R.C. 4123.57(A) IEC and permanent partial disability as well.

{¶ 21} *Gen. Motors* was followed by *Stephenson*, *supra*. *Stephenson* held that nonmedical disability factors must be included in determining permanent total disability. Since permanent total disability is a form of IEC, logic dictates inclusion of nonmedical factors in evaluation of IEC under former R.C. 4123.57(A) as well. *State ex rel. Arias v. Indus. Comm.* (1990), 49 Ohio St.3d 76, 551 N.E.2d 135.

{¶ 22} *State ex rel. Bouchonville v. Indus. Comm.* (1988), 36 Ohio St.3d 50, 521 N.E.2d 773, was the first case to specifically order the commission to consider nonmedical factors when determining PPD. There, the commission found a twelve percent permanent partial disability. Given the statutory option of receiving compensation as a lump sum[1] to compensate for permanent partial disability or as weekly IEC benefits, claimant elected the latter. The commission, however, denied compensation for IEC after finding that the reduction of claimant's earnings was not related to his accident. The appellate court ordered compensation for IEC, prompting appeals from the employer and commission.

{¶ 23} *Bouchonville* is problematic because of its interchangeable use of PPD and IEC, particularly in its final paragraphs:

"This court has held that it is necessary for the commission to review a claimant's age, education, work record, and all other factors contained in the record *when determining the degree of impairment of earning capacity*. An exhaustive discussion is not required; it is enough that there is an indication that the commission considered such factors. *State, ex rel. Stephenson, v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 31 OBR 369, 519 N.E.2d 946. Hence, the original order of the district hearing officer is flawed because there is no indication that all of the

---

1. Although payment under both options is weekly, payment under former R.C. 4123.57(B) is of weekly installments of a predetermined total. In contrast, payments under subsection (A) are made weekly only so long as the impairment of earning capacity lasts (up to a maximum).

6

relevant factors of *Stephenson* were considered in determining *the percentage of permanent partial disability*.

"Therefore, the judgment of the court of appeals granting a writ of mandamus is modified and the cause is remanded to the commission *to determine the degree of impairment of appellee's earning capacity* in accordance with our decision in *State, ex rel. Stephenson, supra*. The commission shall issue an amended order identifying which of the *Stephenson* factors were considered and its *determination of the percentage of permanent partial disability in light of these factors*." (Emphasis added.) *Id*., 36 Ohio St.3d at 52 , 521 N.E.2d at 775.

{¶ 24} Because a claimant could select between compensation based on a percentage of PPD and compensation for IEC, the commission's PPD assessment could stand as the complete declaration of claimant's eligibility for partial disability compensation if claimant elected the former. If the claimant chose compensation for impairment of earning capacity, the PPD determination simply became the first of a two-step process to determine actual IEC. *Bouchonville* involved a claimant who selected IEC benefits, and *Bouchonville's* language clearly demonstrates an intent to have nonmedical factors included in the second step, that of determining impairment of earning capacity. However, by improperly using "PPD" and "IEC" as synonymous terms, *Bouchonville* inadvertently directed the inclusion of these factors in the first step, in which the physical permanent partial disability is determined. This holding was affirmed in *Dickey-Grabler, supra*, and *State ex rel. Johnson v. Indus. Comm*. (1988), 40 Ohio St.3d 384, 533 N.E.2d 775, but because those cases did not involve a direct challenge to the inclusion of nonmedical factors in determining the percentage of physical disability under former R.C. 4123.57(B), *Bouchonville's* error remained uncorrected until now.

{¶ 25} *Bouchonville* and progeny conflict with both *Stephenson* and *Gen. Motors, supra.* Inclusion of nonmedical data in determining PPD undermines the distinction between PPD and IEC that *Gen. Motors* so heavily stressed. This is

because, as we observed in *State ex rel. Kaska v. Indus. Comm*. (1992), 63 Ohio St.3d 743, 746, 591 N.E.2d 235, 237, compensation for PPD is "intended to compensate injured claimants who can still work." If a claimant is indeed working, nonmedical factors can only be relevant within the context of claimant's ability to perform <u>other</u> sustained remunerative employment. Consideration of nonmedical factors would truly make PPD indistinguishable from IEC.

{¶ 26} Equally important, the interchangeable use of PPD and IEC prompted the conclusion that *Stephenson* supports the consideration of nonmedical factors in PPD determinations. *Stephenson* said no such thing. It spoke only to the inclusion of nonmedical factors in considering permanent total disability claims— again, a form of IEC.

{¶ 27} Removing *Stephenson* as the foundation for considering nonmedical factors leaves *Bouchonville* unsupported. Coupled with a statutory analysis that favors exclusion of these factors, the commission's position is found to be more persuasive.

{¶ 28} We find, therefore, that the commission did not abuse its discretion in basing claimant's permanent partial disability award only on medical findings reasonably demonstrable. *Bouchonville, Johnson,* and *Dickey-Grabler* are hereby overruled to the extent that they are inconsistent with this decision.

{¶ 29} The judgment of the court of appeals is reversed.

*Judgment reversed.*

MOYER, C.J., PFEIFER, COOK and STRATTON, JJ., concur.

DOUGLAS, J., concurs in judgment only.

RESNICK and F.E. SWEENEY, JJ., dissent and would affirm the judgment of the court of appeals.

—————————————