DECISION
{¶ 1} In this original action, relator, Ben Walker ("relator"), requests a writ of mandamus ordering respondent, the Industrial Commission of Ohio ("the commission"), to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation. *Page 2 
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(D) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate examined the evidence and issued a decision (attached as Appendix A), including findings of fact and conclusions of law. Therein, the magistrate concluded that relator has not demonstrated that the commission abused its discretion in denying relator's application for PTD. Specifically, the magistrate found that the report of Dr. Bond constituted "some evidence" upon which the commission could rely. Therefore, the magistrate recommended that this court deny relator's request for a writ of mandamus.
 {¶ 3} Relator has filed the following two objections to the magistrate's decision:
 OBJECTION 1
 THE COMMISSION ABUSED ITS DISCRETION WHEN IT RELIED ON THE MEDICAL REPORT OF DR. BOND. THIS REPORT IS INTERNALLY INCONSISTENT AND DOES NOT CONSTITUTE SOME EVIDENCE.
 OBJECTION 2
 THE COMMISSION ABUSED ITS DISCRETION SINCE COLLATERAL ESTOPPEL PRECLUDED IT FROM DRAWING A NEW CONCLUSION AS TO WHETHER WALKER SUSTAINED A PERMANENT PARTIAL IMPAIRMENT IN ORDER TO DENY PERMANENT TOTAL DISABILITY COMPENSATION.
 {¶ 4} In his first objection, relator argues that the magistrate erred in finding that Dr. Bond's report constituted some evidence upon which the commission could rely on to deny relator's application for PTD. Relator contends that Dr. Bond's report is internally inconsistent; Dr. Bond's observation of "inspiratory crackles * * * at the bases of [relator's] lungs" and shortness of breath after walking 50 feet cannot be reconciled with Dr. Bond's ultimate conclusion that relator had no permanent partial impairment and was capable of *Page 3 
performing very heavy work. We find no merit to this objection. As explained by the magistrate, Dr. Bond's report makes clear that the foregoing observations were mild obstructive pulmonary findings, and, therefore, not attributable to the allowed condition of the claim, asbestosis, which causes restrictive findings on pulmonary function testing. Thus, we agree with the magistrate's analysis and resolution of this issue, and overrule relator's first objection.
 {¶ 5} In his second objection, relator argues that the magistrate ignored his argument that the commission abused its discretion when it relied, in part, on Dr. Bond's finding that relator has a zero percent impairment. Relator asserts that because the commission previously found that he has a ten percent permanent partial impairment for the purpose of awarding permanent partial disability ("PPD"), collateral estoppel precludes it from relying on Dr. Bond's finding that relator has a zero percent impairment to deny his application for PTD.
 {¶ 6} The commission responsively contends, however, that the doctrines of res judicata and collateral estoppel have no application herein. The commission argues, "the issue of [relator's] permanent partial disability was never relitigated before the commission. The hearing was limited to a determination of his capacity for sustained remunerative employment and whether he is permanently and totally disabled. After the hearing, and to this day, the commission still recognizes [relator] as having a 10 percent permanent partial disability." (The commission's brief at 8.)
 {¶ 7} We agree with the position espoused by the commission. In connection with a PTD application, neither the commission nor an examining physician is required to accept the percentage of impairment found in a PPD proceeding. A PPD award is akin to *Page 4 
a damage award, and is not predicated on a finding that the injury impacts the claimant's ability to perform sustained remunerative employment. State ex rel. Holman v. Longfelllow Restaurant (1996),76 Ohio St.3d 44, 47; State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693, 695-696 (res judicata and collateral estoppel do not apply to limit what an examining physician may find during his examination, as the physician's duty is to report his actual clinical findings); State ex rel. S.E. Johnson Cos., Inc. v. Indus. Comm., Franklin App. No. 04AP-634, 2005-Ohio-1536 (the five percent PPD award, standing alone, did not constitute some evidence upon which the commission could rely in allocating a five percent PTD award to the claimant because a PPD award is not premised upon an impairment of earning capacity or an impairment of present and future employment, but, rather, a damage award made as a result of a work-related injury);State ex rel. Taylor v. Indus. Comm., Franklin App. No. 02AP-684, 2003-Ohio-1271; Ohio Adm. Code 4121-3-34(D)(3)(f) ("The adjudicator [of PTD] shall not consider the injured worker's percentage of permanent partial impairment as the sole basis for adjudicating an application for permanent and total disability.").
 {¶ 8} In this case, the commission did not relitigate the issue of relator's level of impairment. Instead, it determined that relator was medically able to return to his former position. And, as even relator concedes, Dr. Bond's finding regarding relator's level of impairment did not serve as the sole basis for the commission's denial of relator's PTD application. To that end, we agree with the commission's characterization that the SHO's reference to Dr. Bond's finding was not a relitigation of relator's "permanent partial disability percentage," but, rather, an effort by the SHO to list Dr. Bond's clinical findings. (The commission's brief at 10.) Though perhaps the magistrate should have discussed *Page 5 
relator's argument in this regard, this does not present any analytical error on the magistrate's part. Indeed, the magistrate correctly concluded that the differing opinion regarding relator's level of impairment was "irrelevant to any inquiry regarding the commission's adjudication of the PTD application." (Mag. report at 10.) Relator's second objection does not demonstrate the existence of an abuse of discretion on the part of the commission, and is not well-taken.
 {¶ 9} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of relator's objections, we overrule the objections, and find that the magistrate made no error of fact or law. Accordingly, for all of the foregoing reasons, we adopt the magistrate's decision as our own, supplement the same with our own conclusion that neither res judicata nor collateral estoppel apply herein, and we deny relator's request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
PETREE and TYACK, JJ., concur.
 APPENDIX A MAGISTRATE'S DECISION Rendered on August 29, 2007 {¶ 10} In this original action, relator, Ben J. Walker, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation. *Page 8 
Findings of Fact: {¶ 11} 1. Relator has an industrial claim that is allowed for asbestosis. The commission officially recognizes February 13, 1997 as the date of diagnosis of the occupational disease.
 {¶ 12} 2. At the request of the Ohio Bureau of Workers' Compensation ("bureau"), relator was examined by Allen J. Cropp, M.D., who also administered a pulmonary function test.
 {¶ 13} 3. Following the testing, Dr. Cropp issued a report captioned "Pulmonary Function Study Interpretation," dated May 13, 2004, stating: "IMPRESSION: This pulmonary function test is consistent with mild obstructive airways disease. Lung volumes and diffusing capacity are normal."
 {¶ 14} 4. Based on his examination and interpretation of the pulmonary function test, Dr. Cropp issued a report dated May 12, 2004, stating:
 Pulmonary function test results are enclosed. These show mild obstruction without diffusing capacity problems. Lung volumes are normal.
 1. Has the injured worker sustained a percentage of permanent partial impairment as a result of the allowed injury/ICD codes listed below? Please use the most recent edition of the AMA Guides to the Evaluation of Permanent Impairment.
 Yes, the injured worker has sustained a percentage of permanent partial impairment as a result of the allowed injury/ICD code 501 ASBESTOSIS.
 2. Please limit your opinion to impairment factors only and state these in a whole number as impairment to the whole body.
 This claimant has a ten percent (10%) impairment to the whole body; Class 2. *Page 8 
 {¶ 15} 5. On July 14, 2005, relator filed an application for PTD compensation. In support, relator submitted a report, dated June 14, 2005, from James E. Lundeen, Sr., M.D., stating:
 EXAMINATION
 Table 11-6 Criteria for Rating Impairment Due to Air Passage Defects, page 260, 5th
Edition AMA Guides
 Class 4: 50-89% WPI dyspnea occurs at rest, although individual is not necessarily bedridden and dyspnea is aggravated by the performance of any of the usual activities of daily living (beyond personal cleansing, dressing or grooming) and examination reveals partial airway obstruction. Claimant is not attached to a ventilator.
 Examination revealed absence of significant chest wall movements with normal breathing and with attempted deeper breathing. Tactile fremitus revealed significant pulmonary injury from asbestosis. Finger clubbing and nailbed cyanosis were present. The claimant was short of breath even at rest, worse with slow walking.
 Air Passage impairment = 80% WPI
 * * *
 * * * [I]t is my opinion that the claimant, Ben James Walker, is permanently and totally disabled as a direct result of the injuries in this claim. There is no expectation of recovery for him from his injuries. The natures and extents of his injuries are sufficient to permanently remove him from the industrial workplace setting. Furthermore, I opine that he has no potential for retraining.
(Emphasis sic.)
 {¶ 16} 6. On September 19, 2005, at the commission's request, relator was examined by Jess G. Bond, M.D. In his narrative report, Dr. Bond states:
 History of Present Illness
 Mr. Walker, who was employed as a Laborer, stated that he worked for 29 years in steel mills and then after retiring, *Page 9 
worked from about 1987 to 1993 in construction. He said that about 6 or 7 years ago he developed shortness of breath. He said that he never smoked cigarettes. He said that for a while he used an inhaler, but currently he does not. He said that about 2 years ago he began using a cane to walk due to his bad knees. He said that if he walks on flat ground at a slow pace he does not become winded. However, he said if he has to climb up a hill he has to stop and rest. He said that he does not take any medications. He said that he gave up driving a car about 2 years ago. He said that he walks for some exercise, but other than that he does not do any other activities.
 * * *
 Physical Examination
 This is a 79-year-old, 198 pound, 63-inch-tall individual who appears to look his stated age. His son was present throughout the examination. He was noted to be cooperative throughout the examination, however Mr. Walker had difficulty recalling events and clarification was required by his son. He was observed to walk with the aide of a cane. A walk of about 50 feet did lead to some observed shortness of breath and wheezing.
 * * *
 LUNGS / HEART: (significant findings)
 Lungs: There were fine c[r]ackles noted posteriorly at both bases of the lungs. There were no early inspiratory crackles at the axillas.
 Heart: Regular rate and rhythm, with a blowing systolic murmur along the left sternal border. No jugular venous distention while in the semi-reclined position.
 * * *
 Review of the Medical Records
 Pulmonary function testing and other medical records were reviewed and noted.
 Discussion *Page 10 
 On examination Ben J. Walker had some inspiratory c[r]ackles noted at the bases of the lungs. There was no clubbing, or signs of cyanosis. Pulmonary function testing revealed essentially normal findings with only some mild obstructive findings. Asbestosis causes restrictive lung disease, and there were no objective restrictive findings on pulmonary function testing.
 Opinion
 1) Based solely on consideration of the allowed condition(s) within my specialty, and with regard to each specified allowed condition(s), it is my medical opinion that Ben J. Walker has reached maximum medical improvement.
 2) Based solely on consideration of the allowed condition(s) within my specialty, the objective findings at the time of examination, and the AMA's Guide to the Evaluation of Permanent Impairment, Fourth edition, it is my estimation of permanent partial impairment percentage for:
 The claim allowance: Asbestosis
 Chapter 5, Table 8, page 162, Classes of Respiratory Impairment, Class 1, Table 10, which equated to a whole person permanent partial impairment of: 0%.
 {¶ 17} 7. On September 19, 2005, Dr. Bond completed a physical strength rating form on which he indicated that relator is capable of very heavy work, which is defined on the form: "Very heavy work means exerting in excess of one hundred pounds of force occasionally, and/or in excess of fifty pounds of force frequently, and/or in excess of twenty pounds of force constantly to move objects. Physical demand requirements are in excess of those for heavy work."
 {¶ 18} 8. Following a December 22, 2005 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The SHO's order explains:
 This order is based upon the report of Dr. Bond who indicates that the injured worker has reached maximum medical improvement, that he can perform very heavy work, has no permanent partial disability percentage and is *Page 11 
capable of returning to former position of employment without any restrictions due solely based upon the allowed condition for which the injured worker's sole industrial injury is currently recognized.
 The Hearing Officer finds that it is not necessary to consider claimant's disability factors as the claimant has not met the medical impairment threshold established by the Court in the case of Speelman (State, ex rel), v. Indus. Comm. 73 Ohio App.3d 757 (1992). Specifically, the Hearing Officer finds that the claimant's medical impairment does not prevent the claimant from returning to work at his former position of employment. In "Speelman" the Court said:
 "If the Industrial Commission finds that a person is medically able to return to his or her former position of employment based upon some evidence upon which it specifically relies, the inquiry ends because any inability to work is not causally related to the allowed condition."
 In "Speelman" the Court also stated: "In that instance, it is unnecessary to evaluate the non-medical (Stephenson) [State ex rel. Stephenson v. Indus. Comm. (1987), 31 Oho St.3d 167] factors as they are irrelevant to the issue of causal relationship to the allowed condition.["]
 {¶ 19} 9. On January 29, 2007, relator, Ben J. Walker, filed this mandamus action.
Conclusions of Law: {¶ 20} The issue is whether the reports of Dr. Bond constitute some evidence upon which the commission can rely to deny the PTD application.
 {¶ 21} Finding that the reports of Dr. Bond constitute some evidence upon which the commission can rely, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 22} Ohio Adm. Code 4121-3-34 sets forth the commission's rules for the adjudication of PTD applications.
 {¶ 23} Ohio Adm. Code 4121-3-34(D) sets forth the guidelines for the adjudication of PTD applications. *Page 12 
 {¶ 24} Ohio Adm. Code 4121-3-34(D)(1)(c) provides: "If, after hearing, the adjudicator finds that the injured worker is medically able to return to the former position of employment, the injured worker shall be found not to be permanently and totally disabled."
 {¶ 25} In State ex rel. Speelman v. Indus. Comm. (1992),73 Ohio App.3d 757, 761-762, this court stated:
 Where the determination is whether a claimant is permanently and totally disabled, there are several scenarios which we will analyze separately.
 1. The first situation is where the claimant is medically able to return to a former position of employment.
 [2] (a) If the Industrial Commission finds that a person is medically able to return to his or her former position of employment based upon some evidence upon which it specifically relies, the inquiry ends because any inability to work is not causally related to the allowed condition. * * * In that instance, it is unnecessary to evaluate the non-medical (Stephenson) factors as they are irrelevant to the issue of causal relationship to the allowed condition. * * *
 {¶ 26} Here, the SHO cited Speelman for the proposition that reliance upon Dr. Bond's reports renders it unnecessary to evaluate the nonmedical factors.
 {¶ 27} Dr. Bond never stated that relator is medically able to return to his former position of employment as a laborer involving work in steel mills or, later, in construction. However, Dr. Bond did find that the allowed condition produced no impairment and did not prevent relator's return to very heavy work. Obviously, in the absence of impairment, relator is, necessarily, able to return to his former position of employment. Accordingly, if Dr. Bond's reports are shown to be some evidence that the industrial injury produces no *Page 13 
impairment, then the SHO was correct in holding that analysis of the nonmedical factors is rendered irrelevant.
 {¶ 28} A medical report can be so internally inconsistent that it cannot be some evidence upon which the commission can rely. State exrel. Lopez v. Indus. Comm. (1994), 69 Ohio St.3d 445; State ex rel.Taylor v. Indus. Comm. (1995), 71 Ohio St.3d 582. However, a court will not second-guess a doctor's medical expertise to support a claim of internal inconsistency. State ex rel. Young v. Indus. Comm. (1997),79 Ohio St.3d 484.
 {¶ 29} Citing Lopez, relator contends that Dr. Bond's reports are internally inconsistent. Relator points out that Dr. Bond observed "some inspiratory c[r]ackles * * * at the bases of the lungs." Relator also points out that Dr. Bond observed "shortness of breath and wheezing" during a walk of about 50 feet. According to relator, those observations are inconsistent with Dr. Bond's assessment of zero impairment due to the industrial injury and with Dr. Bond's conclusion that relator can perform "very heavy work." The magistrate disagrees.
 {¶ 30} If Dr. Bond had attributed the observed shortness of breath and wheezing to asbestosis, relator's argument would carry some persuasive force. However, Dr. Bond never attributed the observed shortness of breath and wheezing to the allowed condition of the claim.
 {¶ 31} Dr. Bond explained why his observation of pulmonary impairment is not related to the allowed condition: "Pulmonary function testing revealed essentially normal findings with only some mild obstructive findings. Asbestosis causes restrictive lung disease, and there were no objective restrictive findings on pulmonary function testing." *Page 14 
 {¶ 32} In sum, the pulmonary function testing conducted by Dr. Cropp showed "only some mild obstructive findings." (Emphasis added.) Because asbestosis causes restrictive lung disease, and there were no objective restrictive findings on the pulmonary function testing, Dr. Bond concluded that the allowed condition causes no impairment.
 {¶ 33} Throughout his lengthy argument claiming internal inconsistency, relator fails to acknowledge the distinction that Dr. Bond made between Dr. Cropp's obstructive finding and therestrictive nature of asbestosis.
 {¶ 34} Relator further argues that Dr. Bond's report contains a mistake of fact. According to relator, Dr. Bond renders a mistake of fact when he states: "[T]here were no objective restrictive findings'" on pulmonary function testing. According to relator, "[t]he pulmonary function study revealed numerous objective restrictive findings consistent with asbestosis. * * * [T]he study concluded that Walker's symptoms were consistent with mild obstructive airways disease rising to a Class 2 impairment level." (Relator's brief at 8; emphasis added.)
 {¶ 35} Relator has not shown that Dr. Bond's report contains a mistake of fact. Relator misreads Dr. Bond's report and fails to acknowledge the distinction between "restrictive" and "obstructive."
 {¶ 36} Parenthetically, the magistrate notes that there may indeed be inconsistency between Dr. Cropp's ten percent impairment rating based upon the "mild obstructive airways disease" shown on the pulmonary function test and Dr. Bond's conclusion that the allowed condition causes zero impairment. However, any inconsistency between Dr. Cropp's report and Dr. Bond's report is irrelevant to any inquiry regarding the commission's adjudication of the PTD application. The commission relied *Page 15 
exclusively upon Dr. Bond's report. It did not rely upon Dr. Cropp's May 12, 2004 report in adjudicating the PTD application.
 {¶ 37} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus. *Page 1