The STATE of Ohio ex rel. PITTSBURGH & CONNEAUT DOCK CO.

v.

INDUSTRIAL COMMISSION OF OHIO et al.

[Cite as *State ex rel. Pittsburgh & Conneaut Dock Co. v. Indus. Comm.*, 160 Ohio App.3d 741, 2005-Ohio-2206.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 04AP–616.

Decided May 5, 2005.

Baughman, Henderson & Joyce, L.L.C., and Eileen M. Joyce, for relator.

Jim Petro, Attorney General, and Kevin J. Reis, Assistant Attorney General, for respondent Industrial Commission of Ohio.

Shapiro, Shapiro and Shapiro Co., L.P.A., Leah P. VanderKaay, and Daniel L. Shapiro, for respondent Robert Palagyi.

---

FRENCH, Judge.

{¶ 1} Relator, Pittsburgh & Conneaut Dock Co., filed this original action seeking a writ of mandamus ordering respondent Industrial Commission of Ohio, to credit relator with the permanent partial disability ("PPD") compensation paid to respondent-claimant Robert Palagyi pursuant to the Longshore and Harbor Workers' Compensation Act, Section 901 et seq., Title 33, U.S.Code ("LHWCA").

{¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that we deny the writ of mandamus. (Attached as an appendix.)

{¶ 3} Relator filed objections to the magistrate's decision. Relator argued that the magistrate erred (1) in concluding that R.C. 4123.54 does not require the commission to credit an award of PPD compensation for amounts received by the claimant under the LHWCA and (2) in failing to apply the doctrine of federal preemption, resulting in a decision that impermissibly stands as an obstacle to the objectives of the United States Congress. The commission filed a memorandum in opposition to these objections.

{¶ 4} The magistrate's decision provides detailed findings of fact in this matter, and we adopt those findings as our own. In her conclusions of law, the magistrate correctly set out the standards by which we must decide whether to

issue a writ in this case, and we also adopt those conclusions as our own. As to the interpretation of R.C. 4123.54, however, we disagree with the magistrate's legal conclusions and, on that point, sustain relator's first objection.

{¶ 5} In this case, claimant filed for, and ultimately received, PPD compensation under the federal system of workers' compensation for longshore and harbor workers under the LHWCA, which applies to relator as an employer of maritime workers. Thereafter, claimant also filed for, and ultimately the commission awarded him, PPD compensation through the Ohio workers' compensation system, which applies to relator as an employer in Ohio. We look first to the reach of the LHWCA.

{¶ 6} In 1927, Congress enacted a federal compensation law for maritime workers, the Longshoremen's and Harbor Workers' Compensation Act, Section 901 et seq., Title 33, U.S.Code. The act was Congress's answer to United States Supreme Court decisions invalidating previous congressional efforts to provide compensation to maritime employees through state compensation laws. The 1927 law provided compensation for injuries "occurring upon the navigable waters of the United States * * * if recovery * * * through workmen's compensation proceedings may not validly be provided by State law." Section 903, Title 33, U.S.Code, 44 Stat. 1426, cited in *Sun Ship, Inc. v. Pennsylvania* (1980), 447 U.S. 715, 717–718, 100 S.Ct. 2432, 65 L.Ed.2d 458. This effort to provide compensation for injuries occurring "upon the navigable waters," however, led to confusion for maritime workers whose work could be characterized as "maritime but local," and decades of litigation ensued. Id. at 718, 100 S.Ct. 2432, 65 L.Ed.2d 458.

{¶ 7} In 1972, Congress amended the LHWCA. Congress broadened the definition of "navigable waters of the United States" to include "any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel." Section 903(A), Title 33, U.S.Code. Thus, Congress extended the LHWCA's coverage inland, where state compensation laws had in the past applied exclusively. Importantly, Congress also removed the provision precluding federal recovery if a state remedy was available. Section 903(e), Title 33, U.S.Code; *Kelly v. Pittsburgh & Conneaut Dock Co.* (C.A.6, 1990), 900 F.2d 89, 92.

{¶ 8} In *Sun Ship*, 447 U.S. at 720, 100 S.Ct. 2432, 65 L.Ed.2d 458, the Supreme Court analyzed the reach of the 1972 amendments vis-à-vis state compensation systems and concluded:

[T]he 1972 extension of federal jurisdiction supplements, rather than supplants, state compensation law. Given that the pre–1972 Longshoremen's Act ran concurrently with state remedies in the "maritime but local" zone, it follows that the post–1972 expansion of the Act landward would be concurrent as well.

For state regulation of worker injuries is even more clearly appropriate ashore than it is upon navigable waters. * * *

The language of the 1972 amendments cannot fairly be understood as pre-empting state workers' remedies from the field of the LHWCA * * *.

{¶ 9} Thus, we must conclude as a preliminary matter, as the court did in *Sun Ship,* that the LHWCA does not preclude a state workers' compensation award to a state maritime worker, like claimant, injured in an "adjoining area." We look, then, to the reach of Ohio's laws.

{¶ 10} R.C. Chapter 4123 prescribes Ohio's comprehensive program for compensating Ohio workers injured in the course of their employment. The key issue in this matter arises from R.C. 4123.54, which provides:

> If any employee or the employee's dependents are awarded workers' compensation benefits or recover damages from the employer *under the laws of another state,* the amount awarded or recovered, whether paid or to be paid in future installments, shall be credited on the amount of any award of compensation or benefits made to the employee or the employee's dependents by the bureau.

(Emphasis added.)

{¶ 11} We begin with the principle that "[w]here the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation. An unambiguous statute is to be applied, not interpreted." *Sears v. Weimer* (1944), 143 Ohio St. 312, 28 O.O. 270, 55 N.E.2d 413, paragraph five of the syllabus. Thus, "[i]t is only where the words of a statute are ambiguous or are based upon an uncertain meaning or there is an apparent conflict of some provisions that a court has the right to interpret a statute." *Drake–Lassie v. State Farm Ins. Cos.* (1998), 129 Ohio App.3d 781, 788, 719 N.E.2d 64, appeal dismissed, 84 Ohio St.3d 1425, 702 N.E.2d 901, citing *Kroff v. Amrhein* (1916), 94 Ohio St. 282, 114 N.E. 267.

{¶ 12} The commission argues, and the magistrate found, that the meaning of "laws of another state" is clear, i.e., the phrase refers only to the laws of one of the other 49 states. However, R.C. 1.59, which defines the term "state" as used in the Ohio Revised Code, suggests otherwise. R.C. 1.59 provides that the word " '[s]tate,' when applied to a part of the United States, includes any state, district, commonwealth, territory, insular possession thereof, and *any area subject to the legislative authority of the United States of America.*" (Emphasis added.) Applying, as we must, the definition of "state" found in R.C. 1.59, we find that the phrase "laws of another state" includes laws of "any area subject to the legislative authority of the United States of America," including the United States itself.

{¶ 13} But even if we were to conclude that R.C. 4123.54 is ambiguous and therefore subject to the rules of statutory interpretation, we would still find that

"another state" includes the "United States," as follows. First, we must presume that the General Assembly intended a "just and reasonable result." R.C. 1.47. In determining the intent of the legislature, we may also consider "(A) The object sought to be attained; (B) The circumstances under which the statute was enacted; (C) The legislative history; (D) The common law or former statutory provisions, including laws upon the same or similar subjects; (E) The consequences of a particular construction; [and] (F) The administrative construction of the statute." R.C. 1.49.

{¶ 14} Section 35, Article II, of the Ohio Constitution articulates clearly the purpose behind R.C. Chapter 4123:

For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment * * *. Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law * * * shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease.

{¶ 15} Like many other states, Ohio developed this program "in the early part of the century to cope with the risks and consequences of injury inherent in industrial employment. In exchange for the relative certainty of swift compensation provided by the system, employees relinquished their right to bring common law actions against their employers for injury and loss." *Seth v. Capitol Paper Co.* (Aug. 29, 1990), Montgomery App. No. 11539, 1990 WL 125724. Moreover, "[w]hile the premium is paid by employers, in the last analysis it amounts to a deduction from the wages due the workmen to create a fund to be administered for their benefit * * * in the strictest sense a mutual insurance." *Indus. Comm. v. Drake* (1921), 103 Ohio St. 628, 636, 134 N.E. 465.

{¶ 16} Finally, as this court explained in *Sidenstricker v. Miller Pavement Maintenance, Inc.* (Oct. 25, 2001), Franklin App. No. 00AP–1146, 2001 WL 1286419:

The basic purpose of workers' compensation is to protect and provide a remedy for employees injured in the course of their employment. * * * To accomplish that purpose, the workers' compensation legislation balances the rights and duties of employers and employees by striking a bargain between them.

{¶ 17} While the overall legislative purpose of R.C. Chapter 4123 is to protect and compensate employees for injuries occurring on the job, the obvious intent of the limiting language of R.C. 4123.54 is to prevent excessive compensation for such injuries. As the Second District found in *Lynch v. Mayfield* (1990), 69 Ohio App.3d 229, 235, 590 N.E.2d 351:

The language of this provision indicates that the General Assembly foresaw the possibility that an injured employee could receive workers' compensation for an injury from more than one state. Such multiple and simultaneous recoveries are then subject to a setoff to prevent an excessive recovery for the same injury in the coverage provided by Ohio.

{¶ 18} In our view, reading the phrase "the laws of another state" to apply only to compensation received from *states,* and not to compensation received from the *United States,* would allow an unjust and unreasonable result: double payment by the employer and double recovery to the employee. In coming to this conclusion, we acknowledge R.C. 4123.95, which provides, "Sections 4123.01 to 4123.94, inclusive, of the Revised Code shall be liberally construed in favor of employees." But even granting the most liberal construction, the commission has pointed to no provision, nor to any Ohio decision, that allows double recovery to an employee for a single injury. In its brief to the magistrate, the commission offered *State ex rel. Clark v. Indus. Comm.* (2001), 92 Ohio St.3d 455, 751 N.E.2d 967, in which the Ohio Supreme Court affirmed this court's refusal to allow the commission to offset a claimant's workers' compensation award by an amount equal to the value of his hostage leave. There, however, the court found that, pursuant to the applicable collective-bargaining agreement, the hostage leave compensated the employee for psychological injuries, which were distinct from the physical injuries underlying his temporary total disability. Those distinct injuries entitled the claimant to distinct recoveries. Here, claimant seeks both federal and state compensation for the identical physical injury, and thus *Clark* does not apply.

{¶ 19} In contrast, we look to *State ex rel. Maurer v. Indus. Comm.* (1989), 47 Ohio St.3d 62, 547 N.E.2d 979, and similar cases interpreting R.C. 4123.57. See, e.g., *State ex rel. Cook v. Zimpher* (1985), 17 Ohio St.3d 236, 17 OBR 474, 479 N.E.2d 263; *State ex rel. Walker v. Indus. Comm.* (1979), 58 Ohio St.2d 402, 12 O.O.3d 347, 390 N.E.2d 1190. In *Maurer,* an employee sustained an injury to his left leg. The commission approved his application for PPD under R.C. 4123.57(B). After losing the use of his leg entirely, the employee applied for a scheduled award under R.C. 4123.57(C). The commission approved a total disability award but deducted the partial disability award that the employee had received previously. The Supreme Court found that the commission had properly deducted the PPD award because a holding to the contrary would have permitted a double recovery for a single injury. The court came to this conclusion despite statutory language that, if applied literally, would have allowed duplicative awards. The court found, at 65, 547 N.E.2d 979:

It is obvious the General Assembly did not contemplate that an employee could originally qualify under division (B) and then later also qualify under

division (C) for the same injury. Thus, division (D) contains no provision for deduction of a division (B) award from a division (C) award simply because the legislature did not envision a situation where a claimant could ever be entitled to both—not because the General Assembly intended a double payment for a single injury. The rule of expressio unius est exclusio alterius is inapplicable under these circumstances.

{¶ 20} Thus, even if R.C. 1.59 did not compel our interpretation of R.C. 4123.54, we would find the court's reasoning in *Maurer* applicable here. Enacted in 1941 as G.C. 1465–68, Ohio's provision for crediting awards made under "the laws of another state" preceded Congress's 1972 amendments by decades. 119 Ohio Laws 1941, 568. Until the 1972 amendments, the LHWCA did not apply to inland injuries and, for those injuries it did cover, did not provide for a federal recovery if a state remedy was available. Therefore, in 1941, the Ohio General Assembly would not have contemplated recoveries under both federal and state laws for a single maritime-related injury. Thus, applying the *Maurer* reasoning to this case, R.C. 4123.54 does not expressly require a credit for a federal award, "simply because the legislature did not envision a situation where a claimant could ever be entitled to both—not because the General Assembly intended a double payment for a single injury." For this additional reason, we interpret R.C. 4123.54 to require a credit for an LHWCA award against a state workers' compensation award for the same injury, and, on these grounds, we sustain relator's first objection.

{¶ 21} Because our ruling on relator's first objection resolves this case entirely, we need not reach relator's second objection, i.e., that the LHWCA preempts an Ohio award that does not require an offset for an LHWCA award. For these reasons, the requested writ is granted, and we order respondent commission to credit relator with the PPD compensation paid to claimant pursuant to the LHWCA.

Objections sustained in part,
and writ of mandamus granted.

KLATT and McGRATH, JJ., concur.

## APPENDIX

### MAGISTRATE'S DECISION

Rendered on December 9, 2004

STEPHANIE BISCA BROOKS, Magistrate.

{¶ 22} Relator, Pittsburgh & Conneaut Dock Company, has filed this original action requesting that this court issue a writ of mandamus ordering respondent

Industrial Commission of Ohio to credit relator with the permanent partial disability ("PPD") compensation paid to respondent Robert Palagyi, after claimant was paid pursuant to the Longshore and Harbor Workers' Compensation Act, Section 905, 33 U.S.Code et seq. ("LHWCA"). Relator contends that R.C. 4123.54 requires the commission to credit relator with the PPD compensation paid to claimant.

*Findings of Fact:*

{¶ 23} 1. Claimant sustained a work-related injury on December 30, 2001, and his injury has been described as "fractured left radius." There is no dispute that claimant's injury occurred in the course of his employment with relator.

{¶ 24} 2. In March 2003, claimant began receiving compensation through LHWCA in the amount of two-thirds his average weekly wage.

{¶ 25} 3. Subsequently, claimant received a lump-sum payment for all remaining PPD compensation owed to him under LHWCA.

{¶ 26} 4. In April 2003, claimant filed an application with the Ohio Bureau of Workers' Compensation, and a tentative order was issued awarding claimant PPD compensation.

{¶ 27} 5. Following a hearing on October 17, 2003, a staff hearing officer ("SHO") issued an order providing:

[T]he injured worker has 15% permanent partial disability as a result of the allowed condition(s), which would entitle the injured worker to an award of compensation for a period of 30 weeks. This award is to be paid in accordance with the applicable provisions of the Ohio Revised Code, including Section 4123.57.

\* \* \*

The Staff Hearing Officer specifically finds that there is no offset in said award under Ohio Workers' Compensation statutes due to the fact that claimant has received a similar reward for the same injury under federal law which is covered by the Longshore Harbor Workers' Compensation Act.

{¶ 28} 6. Relator filed a motion for reconsideration arguing that it was entitled to a credit for the amounts of PPD compensation already paid to claimant under LHWCA.

{¶ 29} 7. Relator's request for reconsideration was denied by an order of the commission mailed on March 26, 2004.

{¶ 30} 8. Relator filed another motion for reconsideration, which was denied by an order mailed on May 14, 2004.

{¶ 31} 9. Thereafter, relator filed the instant mandamus action in this court.

*Conclusions of Law:*

{¶ 32} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide that relief. *State ex rel. Pressley v. Indus. Comm.* (1967), 11 Ohio St.2d 141, 40 O.O.2d 141, 228 N.E.2d 631. A clear legal right to a writ of mandamus exists when the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.* (1986), 26 Ohio St.3d 76, 26 OBR 66, 497 N.E.2d 70. On the other hand, when the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.* (1987), 29 Ohio St.3d 56, 29 OBR 438, 505 N.E.2d 962. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.* (1981), 68 Ohio St.2d 165, 22 O.O.3d 400, 429 N.E.2d 433.

{¶ 33} There is only one issue in this case. Relator contends that it is entitled, by law, to reimbursement for the PPD compensation paid to claimant through LHWCA and that the commission abused its discretion by not granting that reimbursement. Relator contends that R.C. 4123.54 requires the commission to credit PPD compensation by the amount of PPD compensation already paid to claimant under LHWCA.

{¶ 34} The Supreme Court of Ohio has set forth three requirements that must be met in establishing a right to a writ of mandamus: (1) relator has a clear legal right to the relief prayed for; (2) respondent is under a clear legal duty to perform the act requested; and (3) relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle* (1983), 6 Ohio St.3d 28, 6 OBR 50, 451 N.E.2d 225. For the reasons that follow, this magistrate concludes that relator is not entitled to a writ of mandamus.

{¶ 35} R.C. 4123.54 provides:

Every employee, who is injured * * * in the course of employment, * * * * * *

* * * is entitled to receive, either directly from the employer's self-insuring employer as provided in section 4123.35 of the Revised Code, or from the state insurance fund, the compensation for loss sustained on account of the injury, * * * and the medical, nurse, and hospital services and medicines, * * * as are provided by this chapter.

* * *

If any employee or the employee's dependents are awarded workers' compensation benefits or recover damages from the employer under the laws of another state, the amount awarded or recovered, whether paid or to be paid in future installments, shall be credited on the amount of any award of compensation or benefits made to the employee or the employee's dependents by the bureau.

{¶ 36} By its plain words, R.C. 4123.54 provides that if an employee is awarded workers' compensation benefits from the employer under the laws of another state, then the amount awarded shall be credited on the amount of any award of compensation made to the employee by the bureau. R.C. 4123.54 does not refer to any compensation paid under a federal act, as is applicable here. While it certainly would make sense for claimants not to be paid twice for the same injuries, regardless of the source of that money, R.C. 4123.54 does not, by its language, require the commission to do that which relator requests this court order the commission to do. Because relator cannot establish a clear legal right to a writ of mandamus by statutory law or case law, it is inappropriate to order the commission to do so through a writ of mandamus. Mandamus is not appropriate when the relator cannot demonstrate a clear legal right. The commission cannot be said to have abused its discretion when the law does not require a certain action on its part.

{¶ 37} Based on the foregoing, this magistrate finds that relator has not demonstrated that the commission abused its discretion by refusing to apply R.C. 4123.54 to credit relator for the amount of money paid to claimant through the LHWCA. Therefore, relator is not entitled to a writ of mandamus.