[THE STATE, EX REL.] MAURER, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO
ET AL., APPELLANTS; OHIO DEPARTMENT OF TRANSPORTATION.

[Cite as State, ex rel. Maurer, *v.* Indus. Comm.
(1989), 47 Ohio St. 3d 62.]

(No. 88-1160—Submitted September 26, 1989—Decided December 13, 1989.)

*Butler, Cincione, DiCuccio &
Dritz* and *David B. Barnhart,* for ap-
pellee.

*Anthony J. Celebrezze, Jr.,* attor-

ney general, and *Isabella Dixon,* for appellants.

HOLMES, J. This case presents us with the following issue: When a work-related injury to an appendage, for which permanent partial disability benefits have been awarded pursuant to R.C. 4123.57(B), deteriorates to the point of total loss of use of such appendage, thus qualifying for a scheduled award pursuant to R.C. 4123.57 (C), may the original permanent partial disability benefit(s) be credited to the amounts of the scheduled benefits payable for loss of use under division (C)? We answer such query affirmatively, as a holding to the contrary would permit a double recovery for a single injury, contrary to the language and purpose of R.C. 4123.57.

It is well-settled that a writ of mandamus will not issue unless relator demonstrates that: (1) he has a clear right to the relief requested; (2) the respondents are under a clear legal duty to perform the requested acts; and (3) no plain and adequate remedy in the ordinary course of law exists. *State, ex rel. Westchester Estates, Inc.,* v. *Bacon* (1980), 61 Ohio St. 2d 42, 15 O.O. 3d 53, 399 N.E. 2d 81, paragraph one of the syllabus. The legal duties of appellant Industrial Commission here are set forth in R.C. 4123.57.[1]

R.C. 4123.57(B) provided, in pertinent part:

"The district hearing officer, upon such application, shall determine the percentage of the employee's permanent disability, *except such as is subject to division (C) of this section,* based

upon that condition of the employee resulting from the injury or occupational disease and causing permanent impairment evidenced by medical or clinical findings reasonably demonstrable. The employee shall receive sixty-six and two-thirds per cent of his average weekly wage, * * * for the number of weeks which equals such percentage of two hundred weeks. * * *

"No award shall be made under this division based upon a percentage of disability which, when taken with all other percentages of permanent disability, exceeds one hundred per cent. If the percentage of such permanent disability of the employee equals or exceeds ninety per cent, compensation for permanent partial disability shall be paid for two hundred weeks." (Emphasis added.)

R.C. 4123.57(C) provided, in pertinent part:

"In cases included in the following schedule the compensation payable per week to the employee shall be sixty-six and two-thirds per cent of his average weekly wage * * * and shall continue during the periods provided in the following schedule:

"* * *

"For the loss of a leg, two hundred weeks."

Divisions (B) and (C) award benefits for permanent partial disability that are similar to general damages. *State, ex rel. Latino,* v. *Indus. Comm.* (1968), 13 Ohio St. 2d 103, 106-107, 42 O.O. 2d 324, 325-326, 234 N.E. 2d 912, 914; *State, ex rel. Hammond,* v. *Indus. Comm.* (1980), 64 Ohio St. 2d 237, 239, 18 O.O. 3d 438, 440, 416 N.E. 2d 601, 603. In the syllabus of *State, ex rel.*

---

[1] R.C. 4123.57 was amended, effective August 22, 1986 (see 141 Ohio Laws, Part I, 718, 767-773), eliminating the provisions for temporary partial compensation provided in former R.C. 4123.57(A). The amendment, *inter alia,* re-lettered former

divisions (B) and (C) (at issue here) to (A) and (B), respectively. For the sake of consistency with the lower court's determinations, the former lettering will be utilized in this opinion.

*Walker,* v. *Indus. Comm.* (1979), 58 Ohio St. 2d 402, 12 O.O. 3d 347, 390 N.E. 2d 1190, this court held that a "total and permanent loss of use of both legs constitutes a 'loss' within the meaning of R.C. 4123.57(C). * * *"

Finally, R.C. 4123.57(D) provided, in pertinent part:

"Compensation for partial disability under divisions (A), (B), and (C) of this section shall be in addition to the compensation paid the employee for the periods of temporary total disability resulting from the injury or occupational disease, but the amount of compensation paid for partial disability under division (A) of this section is not in addition to the compensation paid for permanent partial disability under division (B) or (C) of this section and the amount of compensation paid for partial disability under division (A) of this section shall be deducted from the amount of compensation payable for permanent partial disability under division (B) or (C) of this section but only one deduction shall be made if payments are made under both divisions (B) and (C) of this section for permanent partial disability involved *in the same claim.*" (Emphasis added.)

Division (D) clearly permits payment of both a division (B) and division (C) award in the same claim.[2] This case

presents, for the first time, the issue of whether both may be paid, without offset, for the same condition or injury.[3] Appellee first observes that division (D) expressly provides for division (A) awards to be deducted from division (C) awards, but it does *not* provide for a deduction of division (B) awards from division (C) awards. Thus, appellee contends, the statutory rule of construction *expressio unius est exclusio alterius* applies: the General Assembly intended to prohibit what it did not include. His argument is unpersuasive.

Division (B) requires the hearing officer to determine the percentage of an employee's permanent disability, based on the employee's condition resulting from his injury causing permanent impairment. However, such determination is not to include any scheduled disability provided for in division (C) ("hearing officer * * * shall determine the percentage of the employee's permanent disability, except such as is subject to division [C] of this section * * *," R.C. 4123.57 [B]).

These provisions assume that an industrial injury would result in either (1) an amputation or total loss of use of an appendage, or (2) a lesser, permanent disability which allows some use of such appendage. Thus, a claimant would only be entitled to a division (B)

---

[2] See *State, ex rel. Hammond,* v. *Indus. Comm., supra* (64 Ohio St. 2d) at 241-242, 18 O.O. 3d at 441, 416 N.E. 2d at 604-605, wherein we stated:

"It is easy to conceive of a situation where a person might be entitled to recovery under both divisions, *e.g.,* a worker is badly burned, causing him to lose two fingers, and also slightly impairing the use of that arm. In this situation, presumably the worker would be compensated under division (C) for the loss of his fingers, and would look to division (B) for compensation related to the burn injury, an injury not covered, *i.e.,* not 'subject to division (C) of

this section.' R.C. 4123.57(B). This does not, however, mean that division (B) may be applied when the injury is one of the subjects of division (C)."

[3] Appellee maintains he is not seeking a dual payment for the same condition, but rather contends that the loss of use of his leg is a different condition than a partially disabled leg. This argument is not supported by the medical evidence in this case. The aggravation or deterioration of a pre-existing condition or injury does not constitute a new or separate condition, as contemplated by R.C. 4123.57.

*or* (C) award for the same injury. It is obvious the General Assembly did not contemplate that an employee could originally qualify under division (B) and then later also qualify under division (C) for the same injury. Thus, division (D) contains no provision for deduction of a division (B) award from a division (C) award simply because the legislature did not envision a situation where a claimant could ever be entitled to both — not because the General Assembly intended a double payment for a single injury. The rule of *expressio unius est exclusio alterius* is inapplicable under these circumstances.

The decisions of this court support the conclusion that the compensation schemes of divisions (B) and (C) are mutually exclusive with respect to single injuries. In *State, ex rel. Hammond,* v. *Indus. Comm., supra* (64 Ohio St. 2d), at 240-241, 18 O.O. 3d at 440-441, 416 N.E. 2d at 604, this court stated:

"Divisions (B) and (C) serve similar purposes, *i.e.,* the compensation of injuries which result in permanent partial disabilities to a worker. Certainly, the approaches taken by the two sections are different, but, when read together, they comprise a single scheme for the compensation of such injuries. R.C. 4123.57(C) provides an extensive schedule of specific awards to be made in a number of common, easily identifiable situations. Division (B) allows the determination of compensation in those instances where an uncommon injury occurs, one which does not fall within one of the specific categories contained within division (C).

"When thus viewed, the preliminary language of (B) becomes clear as a prescription to read the two divisions together. *Any disability specifically provided for under (C) is not subject to compensation under the provisions of (B) to the extent that compensation is provided for in (C).* Where an injury is not provided for under (C), then resort may be had to (B) to determine what compensation, if any, the injured worker is entitled to. * * *" (Emphasis added.)

Next, in *State, ex rel. GF Business Equipment, Inc.,* v. *Indus. Comm.* (1982), 2 Ohio St. 3d 86, 2 OBR 639, 443 N.E. 2d 147, the claimant had received a division (C) award for the loss of the use of his right hand. His claim was subsequently amended to include a psychological condition, and he then applied for an award under division (B). Two medical reports estimated that the claimant's psychological condition resulted in a permanent partial disability of between sixty-five and seventy-five percent. A third report found a five-percent permanent partial disability under division (B), and noted that the claimant had previously received a division (C) award for his hand. The Industrial Commission made an eighty-percent award, combining the seventy-five and five-percent figures.

Upon petition by the employer, this court affirmed the grant of a limited writ of mandamus requiring the Industrial Commission to identify to which condition the five-percent figure was attributable. This court held:

"Upon inspection of Dr. Paloski's report, it is unclear whether the diagnosis of a five percent permanent partial disability was for new conditions caused by the hand injury, or for injuries already compensated. *Clearly, Hayes [the claimant] may not recover a scheduled award under R.C. 4123.57 (C) in addition to recovering a percentage of permanent partial disability under R.C. 4123.57(B).* However, if the five percent permanent partial disability figure in Dr. Paloski's report

represents injuries in addition to those for which Hayes was already compensated, the five percent permanent partial disability award is allowable." (Emphasis added.) *Id.* at 88, 2 OBR at 641, 443 N.E. 2d at 149-150.

Contrary to the court of appeals' reasoning below, *Hammond* and *GF Business Equipment* do not stand merely for the proposition that awards under divisions (B) and (C) cannot be paid contemporaneously. Neither opinion contains such language, and neither opinion involved a contemporaneous award. In fact, in *GF Business Equipment,* the claimant had previously been awarded division (C) compensation and was, some eighteen months later, seeking additional compensation under division (B). That case, and *Hammond* before it, clearly stand for the proposition that dual awards under divisions (B) and (C), in any sequence, may never be paid to compensate for the same injury.

That this proposition expresses the obvious intent of the legislature is manifest by the practical considerations of appellee's position. As noted in *State, ex rel. Walker,* v. *Indus. Comm., supra,* amputation and loss of use are, for practical purposes, the same — both deprive the claimant of an appendage's use. One who suffers an immediate amputation from a work accident is immediately precluded, by division (B)'s terms, from an award under that division for that condition. Under appellee's position, however, a claimant who suffers the same eventual degree of loss through deterioration instead of amputation may get both division (B) and division (C) compensation if the claimant applies for a division (B) award prior to completely losing an appendage's use. Thus, while the claimants suffer the same practical degree of loss, the amputee is limited to a division (C) award while the "loss of use" claimant may be compensated under both divisions (B) and (C). In *Walker,* this court found it unjust that an amputee could recover under paragraph (C) while a "loss of use" claimant could not. We thus enlarged the definition of "loss" "in order to alleviate the 'obviously unjust result, whereby a claimant's award is measured by the fortuity of the events contributing to his disability * * *.' " *Id.* at 404, 12 O.O. 3d at 348, 390 N.E. 2d at 1192.

Such reasoning applies with equal force in this case. R.C. 4123.95 requires that "[s]ections 4123.01 to 4123.94, inclusive, of the Revised Code shall be liberally construed in favor of employees and the dependents of deceased employees." Courts and the Industrial Commission must not construe these statutes in favor of whichever claimant happens to appear before them at any given time, but in favor of *all* employees and their dependents equally.

Therefore, we hold that a claimant who has received a permanent partial disability award pursuant to former R.C. 4123.57(B), for an injury which subsequently deteriorates to the point of a total loss of use of an appendage or other condition qualifying for a scheduled award, may not be awarded scheduled benefits pursuant to former R.C. 4123.57(C) without an offset of the benefits received under division (B).

Based on all these reasons, the Industrial Commission had no clear legal duty to pay division (B) and division (C) benefits for the same condition without offset, and thus appellee's complaint for a writ of mandamus should be denied. Accordingly, we reverse the judgment of the court of appeals.

*Judgment reversed.*

MOYER, C.J., WRIGHT and H. BROWN, JJ., concur.

67

SWEENEY, DOUGLAS and RESNICK, JJ., dissent.

DOUGLAS, J., dissenting. I respectfully dissent. R.C. 4123.57 permits payment of both a division (B) and a division (C) award. R.C. 4123.57(D). There is nothing in R.C. 4123.57 that authorizes deducting division (B) benefits from division (C) benefits.

If the General Assembly had intended the result reached by the majority, that body certainly knows how to provide for such a result. All we need do is look to R.C. 4123.57(D) where the General Assembly specifically required that division (A) benefits are to be subtracted from division (B) or division (C) benefits. No such provision was made for deducting division (B) benefits from division (C) benefits.

The majority does a good job rewriting the statute to reach the majority's desired result. That, however, as the majority has so often reminded us, is the job of the General Assembly — not this court.

Accordingly, I respectfully dissent.

SWEENEY and RESNICK, JJ., concur in the foregoing dissenting opinion.