[This opinion has been published in *Ohio Official Reports* at 77 Ohio St.3d 252.]

THE STATE EX REL. KING, APPELLANT, V. INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. King v. Indus. Comm*., 1997-Ohio-47.]

*Workers' compensation—Awards based on percentage of permanent disability and awards for scheduled losses remain mutually exclusive for the same injury or condition under R.C. 4123.57(A), as amended.*

(No. 94-2658—Submitted November 12, 1996—Decided January 15, 1997.)

Appeal from the Court of Appeals for Franklin County, No. 93APD10-1467.

————————————

{¶ 1} Appellant, Bradley King, seeks a writ of mandamus (1) ordering appellee Industrial Commission of Ohio to vacate its denial of his application for permanent partial disability compensation ("PPD") and (2) to award him this relief.

{¶ 2} King lacerated his right eye on September 24, 1986 while working as a mechanic for appellee Sterling Service Center, Inc. His workers' compensation claim was recognized for "corneal scleral laceration and intraoccular [*sic*] foreign body right eye; complete loss uncorrected vision right eye." King was later granted an award of $24,188.75 for total loss of vision in his right eye, based on the schedule of payment for losses of R.C. 4123.57(B).

{¶ 3} In February 1992, King applied for the commission's determination of his percentage of permanent partial disability under R.C. 4123.57(A). Richard Fuller, D.O., examined King in April 1992 and diagnosed a twenty-two percent permanent partial impairment. In May 1992, Dr. Ronald Cantor reviewed Fuller's report and concurred as to King's twenty-two percent impairment. In August 1992, however, he reconsidered the degree of impairment on this basis:

"Referencing the AMA Guides, 3rd Edition, Revised, it is my medical opinion that the injured worker has a 0% permanent partial impairment of the whole

person due to the ophthalmological impairment as a result of his 9/24/86 industrial injury.  He has already been awarded for complete loss of uncorrected vision in the right eye."

{¶ 4} In October 1992, the Administrator of the Bureau of Workers' Compensation issued a tentative order finding that King was entitled to "0 percent permanent partial disability."  On King's objection, a district hearing officer ("DHO") modified the tentative order, explaining:

"The Commission finds from proof of record that the claimant has a percentage of permanent partial disability of 22%, which would entitle claimant to an award for the period of 44 weeks, at the rate of $121.67 per week, beginning on 2-16-88.  That the Application for the Determination of the Percentage of Permanent Partial Disability, filed 2-6-92, be granted to the extent of this order. The medical report(s) of Dr(s) Fuller and Cantor were reviewed, evaluated, and compared. The findings and order are based particularly on the medical report(s) of Dr(s) Fuller, a consideration of the claimant's age, education, work history, and other disability factors including physical, psychological and sociological, that are listed within the pending application, the evidence on record, the evidence adduced at the hearing, and any new and changed conditions."

{¶ 5} The administrator requested reconsideration on the ground that the DHO's order was contrary to *State ex rel. G.F. Business Equip., Inc. v. Indus Comm.* (1982), 2 Ohio St.3d 86, 2 OBR 639, 443 N.E.2d 147, in that it compensated King twice for a single injury.  Two staff hearing officers agreed and found that King was entitled to "zero percent permanent partial disability based on medical reports of Drs. Fuller and Canter [*sic*]."

{¶ 6} In October 1993, King filed the instant petition for a writ of mandamus in the Court of Appeals for Franklin County, arguing that R.C. 4123.57 was amended in 1986 to allow an award based on a percentage of permanent disability on top of an award for a scheduled loss  to compensate for a claimant's

2

single injury. A referee disagreed and recommended denial of the writ. The referee concluded that (1) the relevant provisions of R.C. 4123.57, as amended, precluded awards based on percentage of disability generated by an injury that qualified as a scheduled loss, and (2) the amendment codified the holding in *State ex rel. Maurer v. Indus. Comm.* (1989), 47 Ohio St.3d 62, 547 N.E.2d 979. Having found King ineligible for further PPD, the referee did not reach King's second argument—that Dr. Cantor's opinion of zero percent impairment was a legal conclusion and did not constitute "some evidence" for the commission's decision. Over King's objections, the court of appeals adopted the referee's report and denied the writ of mandamus.

{¶ 7} The cause is before this court upon an appeal as of right.

*Sheerer & Pitts Co., L.P.A.*, and *Thomas R. Pitts*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Cheryl J. Nestor*, Assistant Attorney General, for appellee Industrial Commission.

———————————

*Per Curiam.*

{¶ 8} Two questions are presented for our review: (1) Did the 1986 amendment of R.C. 4123.57(A), (B) and (C) permit an award based on a percentage of permanent disability in addition to an award for a scheduled loss for the same injury, and (2) did the commission abuse its discretion in denying King PPD based on a physician's opinion that Kind did not qualify for this compensation? For the reasons that follow, we find that King cannot recover under R.C. 4123.57(A) and (B), as amended, for the same condition and that the commission properly drew this conclusion. Accordingly, we affirm.

R.C. 4123.57(A), (B) and (C)

**{¶ 9}** King was compensated for the loss of vision in his right eye pursuant to the injury payment schedule in R.C. 4123.57(B). He now seeks a determination of his percentage of permanent disability for the same injury under R.C. 4123.57(A).

**{¶ 10}** King concedes that prior to the 1986 amendment of R.C. 4123.57, claimants were not entitled to both an award based on a percentage of permanent disability and an award for a scheduled loss for the same injury. Indeed, in *State ex rel. Maurer v. Indus. Comm.* (1989), 47 Ohio St.3d 62, 547 N.E.2d 979, we construed former R.C. 4123.57(B), the pre-1986 provision governing percentage of permanent disability, in connection with former R.C. 4123.57(C), the pre-1986 scheduled-loss provision, and concluded that while division (B) required hearing officers to determine the percentage of an employee's permanent disability, that determination was not to include any scheduled disability provided for in division (C). We came to this conclusion because division (B) expressly excepted injuries listed in the payment schedule of division (C). *Id.* at 64-65, 547 N.E.2d at 982. This exception and prior case law persuaded us that the compensation schemes of divisions (B) and (C) were mutually exclusive with respect to single injuries. We explained:

"'Divisions (B) and (C) serve similar purposes, *i.e.*, the compensation of injuries which result in permanent partial disabilities to a worker. Certainly, the approaches taken by the two sections are different, but, when read together, they comprise a single scheme for the compensation of such injuries. R.C. 4123.57(C) provides an extensive schedule of specific awards to be made in a number of common, easily identifiable situations. Division (B) allows the determination of compensation in those instances where an uncommon injury occurs, one which does not fall within one of the specific categories contained within division (C).

"'When thus viewed, the preliminary language of (B) becomes clear as a prescription to read the two divisions together. *Any disability specifically provided for under (C) is not subject to compensation under the provisions of (B) to the extent that compensation is provided for in (C).* Where an injury is not provided for under (C), then resort may be had to (B) to determine what compensation, if any, the injured worker is entitled to. * * *' (Emphasis added.)" *Id.* at 65, 547 N.E.2d at 982-983, quoting *State ex rel. Hammond v. Indus. Comm.* (1980), 64 Ohio St.2d 237, 240-241, 18 O.O.3d 438, 440-441, 416 N.E.2d 601, 604.

{¶ 11} The 1986 amendment of R.C. 4123.57, among other changes, relettered division (B) to (A), replacing provisions for partial disability and impaired earning capacity. Division (C) was similarly relettered, becoming division (B). No other changes relevant to this cause were made in these divisions. Thus, in providing for percentage of permanent disability, division (A) of the statute still contained the express exception of the division (B) scheduled loss injuries. It provided, in part:

"(A) The district hearing officer, upon such application, shall determine the percentage of the employee's permanent disability, *except such as is subject to division (B) of this section*, based upon that condition of the employee resulting from the injury or occupational disease and causing permanent impairment evidenced by medical or clinical findings reasonably demonstrable." (Emphasis added.) 141 Ohio Laws, Part I, 718, 768.

{¶ 12} The court of appeals found that R.C. 4123.57(C), as amended, codified the holding in *Maurer* -- that awards based on percentage of disability and on scheduled losses may both be paid in the same claim, but not for the same injury or condition. R.C. 4123.57(C) provided, in part:

"Compensation for partial disability under divisions (A) and (B) of this section shall be in addition to the compensation paid the employee pursuant to section 4123.56 of the Revised Code. *A claimant may receive compensation under*

*divisions (A) and (B) of this section*." (Emphasis added.) 141 Ohio Laws, Part I, 718, 771.

{¶ 13} But King insists that the amendment of R.C. 4123.57(C) represents the General Assembly's retreat from *Maurer* and establishes that he is now entitled to PPD under R.C. 4123.57(A) on top of the payment he received under R.C. 4123.57(B). We disagree.

{¶ 14} At least since *State ex rel. GF Business Equip., Inc. v. Indus. Comm.* (1982), 2 Ohio St.3d 86, 2 OBR 639, 443 N.E.2d 147, PPD awards for percentage of disability and loss of use have been payable in the same claim, which means that qualifying claimants have been eligible to receive them. In *GF Business*, both forms of PPD were paid to a claimant suffering from two recognized conditions emanating from the same industrial accident—the total loss of use of his right hand and the depressive neurosis the claimant developed due to this loss. Again quoting *Hammond,* 64 Ohio St.2d at 241-242, 18 O.O.3d 441, 416 N.E.2d at 604-605, we explained in *Maurer* why such awards may be made in the same claim:

"'It is easy to conceive of a situation where a person might be entitled to recovery under both divisions, *e.g.*, a worker is badly burned, causing him to lose two fingers, and also slightly impairing the use of that arm. In this situation, presumably the worker would be compensated under division (C) [scheduled losses] for the loss of his fingers, and would look to division (B) [percentage of disability] for compensation related to the burn injury, an injury not covered, *i.e.*, "not subject to division (C) of this section." R.C. 4123.57(B). This does not, however, mean that division (B) may be applied when the injury is one of the subjects of division (C).'" *Maurer*, 47 Ohio St.3d at 64, 547 N.E.2d at 982, fn. 2.

{¶ 15} Thus, the addition of the sentence "A claimant may receive compensation under divisions (A) and (B) of this section" to R.C. 4123.57(C) changed nothing about the result in *Maurer* and cases preceding it. Before and after *Maurer*, a claimant with two different allowed conditions could receive both an

award based on a percentage of disability and an award based on a scheduled loss under R.C. 4123.57, provided that one allowed condition was listed in the schedule of former R.C. 4123.57 (C) (now [B]) and that the claimant otherwise qualified for PPD for the other allowed condition under former R.C. 4123.57(B) (now [A]).

{¶ 16} Moreover, we have said in effect that allowing a claimant to receive PPD compensation under both R.C. 4123.57(A) and (B) is not the same as affording the claimant such compensation for a single injury or condition. In *State ex rel. Guisinger v. Indus. Comm.* (1995), 72 Ohio St.3d 383, 386, 650 N.E.2d 456, 458, we considered the phrase "in the same claim" as it appeared before the 1986 amendment in R.C. 4123.57(D), which became division (C), with significant changes. Former division (D) required that a PPD award paid under former division (A) (impairment of earning capacity) be offset against PPD payments based either on a percentage of disability or on a scheduled loss. If such payments were made "in the same claim," however, division (D) allowed "only one deduction." 133 Ohio Laws, Part III, 2475, 2484.

{¶ 17} To take advantage of the "one deduction" provision, Guisinger, who had received a percentage of disability award and a scheduled loss award for an amputated limb, argued that "in the same claim" meant for the same condition. We disagreed because a worker's condition is "very different" from his claim, which may include one or more allowed conditions. *Id.* at 386, 650 N.E.2d at 458. At the same time, we registered our continued approval of *Maurer,* observing that awards based on percentage of disability and on scheduled loss are not both payable for the same condition.

{¶ 18} King also argues that he should recover under both divisions (A) and (B) of R.C. 4123.57, as amended, because a determination of a percentage of permanent disability accounts for nonmedical factors—the claimant's age, experience, education, etc., see *State ex rel. Dickey-Grabler Co., v. Indus. Comm.* (1992), 63 Ohio St.3d 465, 468, 588 N.E.2d 849, 852—and a scheduled loss award

does not. The disparity King asserts, however, has been recently corrected. In *State ex rel. Holman v. Longfellow Restaurant* (1996), 76 Ohio St.3d 44, 665 N.E.2d 1123, syllabus, we overruled *Dickey-Grabler* and similar cases imposing the requirement that nonmedical factors be considered in determining awards based on percentage of disability. We dispensed with this requirement upon thorough analysis of former R.C. 4123.57(B), which is essentially the same as today's R.C. 4123.57 (A).

{¶ 19} Accordingly, we hold that awards based on percentage of permanent disability and awards for scheduled losses remain mutually exclusive for the same injury or condition under R.C. 4123.57(A), as amended.

Medical Opinion as to King's Ineligibility for PPD

{¶ 20} King's last argument is that the commission could not deny PPD based on Dr. Cantor's opinion as to King's ineligibility. He claims that the opinion constitutes a legal conclusion and, therefore, is not "some evidence" for the decision.

{¶ 21} The commission's interpretation and application of R.C. 4123.57, however, was not a decision that required evidence other than the uncontested facts of King's allowed condition and award under R.C. 4123.57(B). The commission is vested with authority to determine all rights of claimants under the workers' compensation laws, and this authority includes interpreting statutes governing eligibility for benefits. *State ex rel. McLean v. Indus. Comm.* (1986), 25 Ohio St.3d 90, 91-92, 25 OBR 141, 142-143, 495 N.E.2d 370, 371 (commission's interpretation of former R.C. 4123.57[C] entitled to deference). The commission exercised this authority here by determining that King did not qualify for an additional award under R.C. 4123.57(A). Thus, the commission's decision did not depend on Dr. Cantor's view of King's eligibility for PPD, nor did his opinion prevent the commission from independently drawing the same conclusion. The doctor's view was irrelevant.

**{¶ 22}** Having found that King is not entitled to recover under the amended versions of R.C. 4123.57(A) and (B) for the same injury, and that the commission properly determined this, we affirm the court of appeals' judgment denying the requested writ of mandamus.

*Judgment affirmed.*

MOYER, C.J., RESNICK, PFEIFER, COOK and STRATTON, JJ., concur.

DOUGLAS, J., dissents.

F.E. SWEENEY, J., dissents and would reverse the judgment of the court of appeals and grant the writ.

———————————