The STATE ex rel. HONDA OF AMERICA MFG., INC.,

v.

INDUSTRIAL COMMISSION OF OHIO et al.

[Cite as *State ex rel. Honda of Am. Mfg., Inc. v. Indus. Comm.*, 183 Ohio App.3d 732, 2009-Ohio-4210.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–899.

Decided Aug. 20, 2009.

Vorys, Sater, Seymour and Pease L.L.P., Carl D. Smallwood, and Bethany R. Spain, for relator.

Richard Cordray, Attorney General, and Stephen D. Plymale, Assistant Attorney General, for respondent Industrial Commission of Ohio.

David Lancione, L.L.C., and David Lancione, for respondent Daniel Z. Kovacevich.

---

KLATT, Judge.

{¶ 1} Relator, Honda of America Mfg., Inc., commenced this original action in mandamus seeking an order compelling respondent Industrial Commission of Ohio to vacate its February 28 and August 18, 2008 orders that granted additional awards of permanent partial disability ("PPD") compensation for loss of use to respondent Daniel Z. Kovacevich ("claimant"). Relator also requests that this court order the commission to find that the claimant did not sustain a

total loss of use of his left hand and to offset a prior award of PPD compensation from the award for loss of use of portions of claimant's four fingers on his left hand.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate found that the commission abused its discretion by granting a scheduled loss award for the loss of use of claimant's left hand because the evidence did not support the commission's determination that claimant suffered the loss of use of two or more fingers by amputation or ankylosis. The magistrate also found that relator's argument that the commission should have offset a prior PPD award from the commission's loss-of-use award for portions of four fingers on claimant's left hand was premature, given that the claimant had not yet experienced a total loss of use of these appendages. Therefore, the magistrate has recommended that we grant a writ of mandamus ordering the commission to vacate its order granting claimant an award for the total loss of use of his left hand, and to deny such an award. The magistrate also has recommended that we order the commission to grant the appropriate number of weeks of compensation for loss of use of each portion of the four fingers on claimant's left hand without any offset of the prior PPD award.

{¶ 3} Relator has filed objections to the portion of the magistrate's decision that ordered the commission to grant compensation for the loss of use of portions of claimant's four fingers without any offset of the prior PPD award.[1] Relator argues that the magistrate erred by not ordering the commission to offset the prior PPD award from the loss-of-use award for the four fingers because the loss of use of his four fingers resulted from the further deterioration of claimant's original injury. Citing *State ex rel. Maurer v. Indus. Comm.* (1989), 47 Ohio St.3d 62, 547 N.E.2d 979, relator asserts that granting claimant a loss-of-use award for the deterioration of the same injury that was the basis of a prior PPD award, without offsetting the prior PPD award, results in an impermissible double recovery. We agree.

{¶ 4} In *Maurer*, the claimant sustained a workplace injury and his claim was allowed for "left knee, leg and ankle." As a result, claimant received a PPD award pursuant to R.C. 4123.57(B) (now R.C. 4123.57(A)). A number of years later, the claimant lost the use of his left leg due to its deterioration after the injuries he originally sustained. The claimant applied for a scheduled loss-of-use

---

1. Neither relator nor any other party has objected to the portion of the magistrate's decision that orders the commission to vacate the award for the total loss of use of his left hand, and to deny such an award.

award under R.C. 4123.57(C) (now R.C. 4123.57(B)). The *Maurer* court held that a claimant who has received a PPD award under division (B) (now division (A)) for an injury that subsequently deteriorates to the point of a total loss of use of an appendage or other condition qualifying for a scheduled award under division (C) (now division (B)), may not be awarded scheduled benefits without an offset of the prior PPD award. Id. at paragraph one of the syllabus. The court interpreted R.C. 4123.57 as permitting a division-(B) (now division (A)) award *or* a division-(C) (now division (B)) award—but not both. The court reasoned that to hold otherwise would permit a double recovery for a single injury, contrary to the language and purpose of R.C. 4123.57.

{¶ 5} Here, the medical evidence indicates that claimant's original injury, for which he received a PPD award pursuant to R.C. 4123.57(A), deteriorated to the point that claimant now qualified for a scheduled loss-of-use award under R.C. 4123.57(B). Therefore, contrary to the magistrate's decision, we hold that the commission must deduct the claimant's prior R.C. 4123.57(A) PPD award from the subsequent R.C. 4123.57(B) scheduled loss award. Id.

{¶ 6} The magistrate distinguished *Maurer* by pointing out that *Maurer* involved a total-loss-of-use award. Because the case at bar involves only a partial loss-of-use award for four fingers, the magistrate found that it was premature to address the setoff issue. We disagree.

{¶ 7} Although *Maurer* involved a total-loss-of-use award, the rationale expressed therein would apply with equal force to a scheduled partial-loss-of-use award. *Maurer* interpreted R.C. 4123.57 as prohibiting a double recovery for the same injury. Here, because the same injury gave rise to the two awards, permitting a scheduled loss-of-use award for the claimant's four fingers without deducting the prior PPD award would result in a double recovery. In addition, the *Maurer* court did not limit its holding to situations involving a subsequent total-loss-of-use award. It expressly included *"other condition[s] qualifying for a scheduled award."* (Emphasis added.) Id. at paragraph one of the syllabus. Here, the claimant's loss of use of portions of four fingers on his left hand clearly involved a condition qualifying for a scheduled award, even though the claimant did not suffer the total loss of these appendages.

{¶ 8} For these reasons, we sustain relator's objection to the magistrate's decision.

{¶ 9} The commission has also filed an objection to the magistrate's decision. The commission argues that the magistrate erred by failing to find that ankylosis of the knuckles is a new additional condition for which the claimant may receive a scheduled loss-of-use award under R.C. 4123.57(B) as well as an award for the partial paralysis of the left hand under R.C. 4123.57(A). Essentially, the commis-

sion contends that ankylosis of the knuckles is a separate condition for which the injured worker permissibly received an additional scheduled loss-of-use award under R.C. 4123.57(B), not a deterioration of the hand due to the claimant's original injury—brachial artery, median nerve, and ulnar nerve damage resulting in the partial paralysis of claimant's left hand. Therefore, the commission contends, it was not required to set off the prior R.C. 4123.57(A) award. We find, however, that the medical evidence in the record does not support the commission's argument.

{¶ 10} The claimant sustained a work-related injury on June 25, 1998, and his claim was allowed for "injury brachial vessels, left." Claimant underwent several surgeries following this injury. Dr. Mannava explained:

Initially it was thought he just sustained a brachial artery injury. However, surgery did show further damage to the median nerve and later on ulnar nerve. The artery was repaired and initially the median nerve was repaired. He went through extensive occupational therapies. Three or four months later, his ulnar nerve was repaired by a neurosurgeon, Dr. Minarch and again he went through extensive therapy programs and recovered only partially.

{¶ 11} Subsequently, claimant filed an application for PPD pursuant to R.C. 4123.57(A) as a result of his allowed condition. His application was supported by a report from Dr. Mannava. In his report, Dr. Mannava stated:

He reports loss of function of the left hand including inability to move the fingers, sensory loss, etc.

There is obvious evidence of partial paralysis of left hand with intrinsic muscle atrophy. There is partial clawing of mainly the third and fourth fingers and to a lesser degree, the index and fifth digits. The IP joints of the third and fourth digits are at about 90° without any further flexion and only minimal extension. Even the flexion and extension of the index and fifth digits are also limited. He is unable to form any grasp. He is able to form partial lateral pinch between the thumb and index and middle fingers. There is sensory loss mostly on the ulnar aspect and partial along the median distribution.

* * *

Mr. Kovacevich['s] injuries of regular vessels were repaired successfully. However, the repair of median and ulnar nerves above the elbow resulted in only incomplete recovery. This resulted in partial paralysis of the left hand.

{¶ 12} Based upon the "partial paralysis of left hand consisting of both motor and sensory components involving the median and ulnar nerves," Dr. Mannava concluded that claimant had a 29 percent whole-person impairment.

{¶ 13} The administrator of the Ohio Bureau of Workers Compensation relied upon Dr. Mannava's report and found that claimant had a 29 percent PPD, which

entitled him to an award of 58 weeks of compensation. No appeal was taken from this award.

{¶ 14} Claimant was later examined by Daniel E. Lollar, D.C. Based upon his physical findings, Dr. Lollar concluded:

> Several joints which are in a flexed position with no extension ability and very limited motion will ankylose in the future, in my opinion. Some joints are for all practical purposes almost ankylosed now.
>
> * * *
>
> It is my opinion that the patient has almost no useful function of the hand due to the work related injury. Therapy has failed and the patient has severe negative impacts in his activities of daily living. I feel that over time, the joint dysfunction will only worsen, as well as the atrophy already evident due to disuse.

{¶ 15} In November 2007, claimant filed a motion seeking a scheduled loss award for the total loss of use of his left thumb, and the partial loss of use of the four fingers on his left hand. Claimant supported his motion with Dr. Lollar's report.

{¶ 16} Thereafter, Steven S. Wunder, M.D., performed an independent medical examination. Following his review of medical records and his physical examination of claimant, Dr. Wunder opined that claimant did not have a total loss of use of his left thumb. However, Dr. Wunder agreed that claimant sustained the partial loss of use of the four fingers on claimant's left hand due to ankylosis. Significantly, Dr. Wunder also stated:

> The above complications of the DIP joints would be a direct result of the 06/25/98 industrial injury and lack of use of the flexor digitorum profundum due to the median nerve lesion and ulnar nerve lesion.

{¶ 17} It is undisputed that claimant damaged his brachial artery, median nerve, and ulnar nerve in his left arm as the result of his industrial accident. These injuries led to partial paralysis of the fingers on claimant's left hand for which he received a PPD award pursuant to R.C. 4123.57(A). The atrophy resulting from the claimant's limited ability to use these fingers following the injury led to ankylosis in some of the finger joints on claimant's left hand. Therefore, it is clear that ankylosis in these finger joints resulted from the deterioration of the claimant's original injury.

{¶ 18} As previously noted, a claimant who received a PPD award pursuant to R.C. 4123.57(A) for an injury that subsequently deteriorates to the point of a total loss of use of an appendage or other condition qualifying for a scheduled award under R.C. 4123.57(B), may not receive the division-(B) award without an offset of the division-(A) award. *Maurer.* Here, because the ankylosis in some of the

joints in the four fingers resulted from deterioration of claimant's original injury, the commission abused its discretion by not deducting the prior R.C. 4123.57(A) award from the R.C. 4123.57(B) award. Accordingly, we overrule the commission's objection.

{¶ 19} Although we find that the commission must deduct the division-(A) award from the division-(B) award, this case presents a complicating factor. The division-(A) award for the partial paralysis of claimant's left hand involved five appendages—claimant's thumb and four fingers. The medical evidence suggests that the claimant's left thumb may have been negatively affected, even though the commission denied claimant's request for an award for the total loss of use of that thumb. Because the division-(A) award appears to have involved all the appendages on claimant's left hand, some portion of the award may be attributable to claimant's thumb. If, in fact, a portion of the division-(A) award is attributable to the thumb, that portion of the award should not be deducted from claimant's division-(B) award, which was limited to the loss of use of portions of claimant's four fingers.

{¶ 20} Following an independent review of this matter, we find that the magistrate has properly determined the facts. Therefore, we adopt the magistrate's findings of fact. However, we modify the magistrate's conclusions of law as indicated herein. Accordingly, we grant relator's request for a writ of mandamus ordering the commission to vacate its order granting a loss-of-use award under R.C. 4123.57(B) without any deduction of the R.C. 4123.57(A) award. We remand this matter to the commission to determine what portion of the R.C. 4123.57(A) award, if any, is attributable to the claimant's left thumb. We further order the commission to setoff only the portion of the R.C. 4123.57(A) award that relates to the four fingers on claimant's left hand from the R.C. 4123.57(B) award. We also adopt that portion of the magistrate's decision that grants a writ of mandamus ordering the commission to vacate its order finding a total loss of use of claimant's left hand.

Objections of relator sustained,
objections of respondent overruled,
writ of mandamus granted,
and cause remanded.

BRYANT and CONNOR, JJ., concur.

---

## APPENDIX

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

State ex rel.

Honda of America Mfg., Inc.,

Relator,

v.

Industrial Commission of Ohio

and Daniel Z. Kovacevich,

Respondents.

No. 08AP–899

(REGULAR CALENDAR)

MAGISTRATE'S DECISION

Rendered on March 19, 2009

Vorys, Sater, Seymour and Pease L.L.P., Carl D. Smallwood and Bethany R. Spain, for relator.

Richard Cordray, Attorney General, and Stephen D. Plymale, Assistant Attorney General, for respondent Industrial Commission of Ohio.

David Lancione, L.L.C., and David Lancione, for respondent Daniel Z. Kovacevich.

IN MANDAMUS

{¶ 21} Relator, Honda of America Mfg., Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its February 28 and August 18, 2008 orders that granted additional awards of permanent partial disability ("PPD") compensation to respondent Daniel Z. Kovacevich ("claimant"). Relator asks this court to order the commission to permit an offset concerning a prior award of PPD compensation and to find that claimant has not sustained a total loss of use of his left hand.

Findings of Fact

{¶ 22} 1. Claimant sustained a work-related injury on June 25, 1998, and his claim has been allowed for "injury brachial vessels, left."

{¶ 23} 2. Claimant underwent surgery following his injury. In his February 5, 2001 report, V.P. Mannava, M.D., explained:

Initially it was thought he just sustained a brachial artery injury. However, surgery did show further damage to the median nerve and later on ulnar nerve. The artery was repaired and initially the median nerve was repaired. He went through extensive occupational therapies. Three or four months later, his

ulnar nerve was repaired by neurosurgeon, Dr. Minarch and again he went through extensive therapy programs and recovered only partially.

{¶ 24} 3. In October 2001, claimant filed an application for the determination of the percentage of PPD as a result of his allowed condition. His application was supported by the February 5, 2001 report of Dr. Mannava. In his report, Dr. Mannava stated:

He reports of loss of function of the left hand including inability to move the fingers, sensory loss, etc.

There is obvious evidence of partial paralysis of left hand with intrinsic muscle atrophy. There is partial clawing of mainly the third and fourth fingers and to a lesser degree, the index and the fifth digits. The IP joints of the third and fourth digits are at about 90° without any further flexion and only minimal extension. Even the flexion and extension of the index and fifth digits are also limited. He is unable to form any grasp. He is able to form partial lateral pinch between the thumb and index and middle fingers. There is sensory loss mostly on the ulnar aspect and partial along the median distribution.

\* \* \*

Mr. Kovacevich['s] injuries of regular vessels were repaired successfully. However, the repair of median and ulnar nerves above the elbow resulted in only incomplete recovery. This resulted in partial paralysis of the left hand.

{¶ 25} 4. Based upon the "partial paralysis of left hand consisting of both motor and sensory components involving the median and ulnar nerves," Dr. Mannava concluded that claimant had a 29 percent whole-person impairment.

{¶ 26} 5. In an order mailed February 24, 2001, the administrator of the Ohio Bureau of Workers' Compensation ("BWC") relied upon the report of Dr. Mannava and found that claimant had a 29 percent PPD which entitled him to an award of 58 weeks of compensation.

{¶ 27} 6. No appeal was taken from that award.

{¶ 28} 7. Claimant was later examined by Daniel E. Lollar, D.C., who authored a report dated November 20, 2007. Based upon his physical findings upon examination, Dr. Lollar concluded:

Several joints which are in a flexed position with no extension ability and very limited motion will ankylose in the future, in my opinion. Some joints are for all practical purposes almost ankylosed now.

\* \* \*

It is my opinion that the patient has almost no useful function of the hand due to the work related injury. Therapy has failed and the patient has severe negative impacts in his activities of daily living. I feel that over time, the joint

dysfunction will only worsen, as well as the atrophy already evident due to disuse. It is my opinion that he should be considered for loss of use of the hand.

{¶ 29} 8. In November 2007, claimant filed a motion seeking an award for total loss of use of left thumb, one-third loss of index finger, one-third loss of ring finger, two-thirds loss of middle finger, and two-thirds loss of little finger by way of ankylosis. Claimant's motion was supported by the medical report of Dr. Lollar.

{¶ 30} 9. An independent medical examination was performed by Steven S. Wunder, M.D., on January 15, 2008. Dr. Wunder noted: "Inspection of the hand revealed evidence of some joint contractures to the digits. He had some intrinsic muscle wasting from ulnar nerve involvement." Following his review of medical records and his physical examination of claimant, Dr. Wunder concluded:

In my opinion, the patient does not have total loss of use of the left thumb. He is able to bend at the MP joint and IP joint as well as carpometacarpal joint. He does have limited pinch and limited grip activities. However, there is not a total loss of use of the left thumb.

The patient does have 1/3 loss of the index finger by way of ankylosis of the DIP joint.

The patient does have 1/3 loss of the middle finger by way of ankylosis of the DIP joint. He does not have complete ankylosis of the PIP joint.

The patient does have 1/3 loss of the ring finger by way of ankylosis of the DIP joint.

The patient does have 1/3 loss of the little or fifth digit by way of ankylosis of the DIP joint. He does not have ankylosis of the PIP joint.

The above complications of the DIP joints would be a direct result of the 06/25/98 industrial injury and lack of use of the flexor digitorum profundum due to the median nerve lesion and ulnar nerve lesion.

{¶ 31} 10. Claimant's motion was heard before a district hearing officer ("DHO") on January 23, 2008. After reviewing the reports of Drs. Lollar and Wunder, the DHO concluded that claimant had sustained a one-third loss of use of his left index and ring fingers and a two-thirds loss of use of his left middle and little fingers. The DHO concluded that claimant had not sustained a total loss of use of his thumb.

{¶ 32} 11. Relator appealed and the matter was before a staff hearing officer ("SHO") on February 28, 2008. The SHO agreed with the DHO's determinations regarding claimant's loss of use of the four fingers of his left hand. At the hearing, relator argued that the scheduled loss awards of those four fingers should be offset against the loss-of-use award that was previously paid to

claimant by BWC's order of February 24, 2001. The SHO disagreed with relator's argument:

This Staff Hearing Officer reviewed the report of Dr. Mannava dated 02/05/2001. Dr. Mannava found a 29% permanent partial disability. He based the permanent partial disability award on partial nerve paralysis above the elbow related to median nerve damage and partial ulnar nerve injury above the elbow. The permanent partial disability award was not based upon contracture and loss of use of the fingers related to ankylosis. The disability was based upon nerve paralysis, and nerve paralysis alone. There is no medical evidence on file indicating that the loss of use award, due to ankylosis, is duplicative of the nerve paralysis above the elbow or damage to the median and ulnar nerves as given by Dr. Mannava. As such, this Staff Hearing Officer finds no medical support of the offset of the prior permanent partial disability award against the ankylosis award.

{¶ 33} 12. Relator's further appeal was refused by order of the commission mailed April 4, 2008.

{¶ 34} 13. In May 2008, claimant filed a motion seeking a scheduled loss award for the total loss of use of his left hand.

{¶ 35} 14. Claimant was again examined by Dr. Wunder. In his June 12, 2008 report, Dr. Wunder concluded:

In my opinion, Mr. Kovacevich does not have a permanent and total loss of use of the left hand as a result of the 06/25/98 industrial injury. He has had partial loss. This would be due to the loss of use of the DIP joints across the index, long, ring, and little fingers. He does have restricted motion to the thumb but is able to use it for lateral and tip prehension. He is able to perform hook and power grasp type of activities but does have some weakness to 15 pounds.

He would have an approximately 55% impairment to the hand which is a 50% impairment to the extremity and 30% impairment to the whole person. This is very similar to the report prepared by Dr. Mannava.

{¶ 36} 15. Claimant's motion was heard before a DHO on July 8, 2008 and was denied. The DHO concluded:

Irrespective of what the medical opinions are related to this issue, this DHO does not find authority to make such award under this Code Section. This DHO finds this injured worker has been awarded a partial loss of use for his left second, third, fourth, and fifth digits. This DHO does not find the injured worker to have suffered and been awarded the loss of use of two or more fingers by amputation or ankylosis. In addition, this DHO does not find the nature of the injured worker's employment at the time of the injury to be such

that the handicap or disability resulting from the loss of fingers, or loss of use of fingers, exceeds normal handicap or disability resulting from the loss of fingers or loss of use of fingers. This DHO finds the claimant's employment, at the time of injury, involved the performance of factory-type job tasks. This DHO does not find the injured worker's handicap or disability resulting from the partial loss of use of his fingers to exceed the normal handicap or disability resulting from a similar loss of use.

Based upon the above findings, this DHO does not find any discretionary loss of use award related to the left hand to be warranted.

{¶ 37} 16. Claimant appealed, and the matter was heard before an SHO on August 18, 2008. The SHO vacated the prior DHO's order and concluded that claimant had suffered the loss of two or more fingers by ankylosis and that the nature of his employment is such that the handicap or disability resulting therefrom exceeded the normal handicap or disability. As such, the SHO ordered claimant a loss-of-use award for his left hand. Thereafter, the SHO indicated the following offset of PPD compensation because of the award already made to claimant for the one-third loss of use of his left index and ring fingers and the two-thirds loss of use of his middle and little fingers as follows:

The injured worker has already received 48.2 weeks related to the partial loss of use of four of his fingers. Loss of use for a hand equates to payment for 175 weeks. This Staff Hearing Officer finds it appropriate to award 80 more weeks based upon the disability related to the loss of use of his fingers. The ongoing disability is found to be in excess of the normal handicap or disability resulting from such a loss.

{¶ 38} 17. Relator's appeal was refused by order of the commission mailed September 4, 2008.

{¶ 39} 18. Thereafter, relator filed the instant mandamus action in this court.

### Conclusions of Law

{¶ 40} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.* (1967), 11 Ohio St.2d 141, 40 O.O.2d 141, 228 N.E.2d 631. A clear legal right to a writ of mandamus exists when the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.* (1986), 26 Ohio St.3d 76, 26 OBR 66, 497 N.E.2d 70. On the other hand, when the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.* (1987), 29 Ohio St.3d 56, 29 OBR

438, 505 N.E.2d 962. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact-finder. *State ex rel. Teece v. Indus. Comm.* (1981), 68 Ohio St.2d 165, 22 O.O.3d 400, 429 N.E.2d 433.

{¶ 41} Relator argues that the commission abused its discretion in two respects: (1) awarding claimant an award for total loss of use of his left hand and (2) failing to offset the prior award of PPD compensation.

{¶ 42} R.C. 4123.57 provides for the payment of partial disability compensation and provides:

Partial disability compensation shall be paid as follows.

Except as provided in this section, not earlier than twenty-six weeks after the date of termination of the latest period of payments under section 4123.56 of the Revised Code, or not earlier than twenty-six weeks after the date of the injury * * * in the absence of payments under section 4123.56 of the Revised Code, the employee may file an application with the bureau of workers' compensation for the determination of the percentage of the employee's permanent partial disability resulting from an injury.  * * *

* * *

(A) The * * * hearing officer, upon the application, shall determine the percentage of the employee's permanent disability, except as is subject to division (B) of this section, based upon that condition of the employee resulting from the injury * * * and causing permanent impairment evidenced by medical or clinical findings reasonably demonstrable.  The employee shall receive sixty-six and two-thirds per cent of the employee's average weekly wage, but not more than a maximum of thirty-three and one-third per cent of the statewide average weekly wage * * * per week regardless of the average weekly wage, for the number of weeks which equals the percentage of two hundred weeks. * * * [I]n no instance shall the former award be modified unless it is found from medical or clinical findings that the condition of the claimant resulting from the injury has so progressed as to have increased the percentage of permanent partial disability.  * * * An employee may file an application for a subsequent determination of the percentage of the employee's permanent disability.  * * *

* * *

(B) In cases included in the following schedule the compensation payable per week to the employee is the statewide average weekly wage as defined in division (C) of section 4123.62 of the Revised Code per week and shall continue during the periods provided in the following schedule:

* * *

For the loss of a second finger, commonly called index finger, thirty-five weeks.

For the loss of a third finger, thirty weeks.

For the loss of a fourth finger, twenty weeks.

For the loss of a fifth finger, commonly known as the little finger, fifteen weeks.

\* \* \*

If the claimant has suffered the loss of two or more fingers by amputation or ankylosis and the nature of the claimant's employment in the course of which the claimant was working at the time of the injury \* \* \* is such that the handicap or disability resulting from the loss of fingers, or loss of use of fingers, exceeds the normal handicap or disability resulting from the loss of fingers, or loss of use of fingers, the administrator may take that fact into consideration and increase the award of compensation accordingly, but the award made shall not exceed the amount of compensation for loss of a hand.

For the loss of a hand, one hundred seventy-five weeks.

{¶ 43} In the present case, it is undisputed that claimant sustained a work-related injury and that his claim is allowed for one condition and that condition is "injury brachial vessels, left." Further, based upon the medical evidence, it is clear that this injury has affected claimant's left hand and his ability to use that hand.

{¶ 44} As noted in the findings of fact, the commission originally determined that claimant had a 29 percent whole-person impairment based upon the medical report of Dr. Mannava (February 24, 2001). In his February 5, 2001 report, Dr. Mannava indicated that claimant's injury has caused him to experience damage to his median and ulnar nerves resulting in a partial paralysis of his left hand. An award of 29 percent equals payment of compensation for 58 weeks. Again, this payment was for claimant's partial paralysis of his left hand due to the allowed conditions. This award was made under R.C. 4123.57(A).

{¶ 45} In May 2008, claimant filed a motion seeking a scheduled loss award for his loss of use of certain fingers. This motion was made under R.C. 4123.57(B) which provides for scheduled loss awards.

{¶ 46} Ultimately, the commission concluded that claimant had sustained a one-third loss of use of his left index and middle fingers and a two-thirds loss of use of his ring and little fingers. As R.C. 4123.57(B) provides, the following award was made to claimant: for the loss of his index finger, one-third of 35 weeks (11.7 weeks); for his middle finger, two-thirds of 30 weeks (20 weeks); for the loss of his ring finger, one-third of 20 weeks (6.6 weeks); and for the loss of two-thirds of his little finger, two-thirds of 15 weeks (ten weeks). The medical evidence

upon which this award was made includes the reports of Drs. Lollar and Wunder. Dr. Lollar noted that several joints of claimant's fingers were in a fixed position and some joints never, for all practical purposes, ankylosed now. Dr. Wunder noted evidence of joint contractures to the digits with some intrinsic muscle wasting from ulnar-nerve involvement.

{¶ 47} The commission rejected relator's request to offset the loss-of-use award against the previously paid PPD award of 29 percent. The commission found that the previously paid award was due solely to partial paralysis of the left hand caused by nerve damage while the current loss-of-use award was caused by ankylosis.

{¶ 48} Later, based on essentially the same evidence, the commission granted claimant a loss-of-use award for his hand.

{¶ 49} The medical evidence presented supports the commission's determination that claimant has sustained a one-third loss of use of his index and ring fingers and a two-thirds loss of use of his middle and little fingers. However, the evidence does not support the commission's determination that the ankylosis of those four fingers warranted an award for the loss of use of his entire hand under that portion of R.C. 4123.57(B), which provides for an increased award when the claimant has suffered the loss of two or more fingers by amputation or ankylosis and the nature of the claimant's injury exceeds the normal handicap or disability. In the present case, the commission added up the loss of claimant's use of these four fingers and determined that it was equal, mathematically, to a loss of two fingers (1/3 + 1/3 + 2/3 + 2/3 = 2). That determination is not supported by the statute or any case law. Therefore, the magistrate finds that the commission did abuse its discretion by granting claimant an award of the total loss of use of his left hand by adding up the loss of use of four fingers. In this respect, relator is entitled to a writ of mandamus because the commission abused its discretion by increasing claimant's partial loss of use of four fingers to a loss of use of two entire fingers, which amounted to the loss of use of a hand.

{¶ 50} Relator also argues that the commission abused its discretion by failing to offset the new award of PPD compensation under R.C. 4123.57(B) from the earlier award of compensation under R.C. 4123.57(A). For the reasons that follow, the magistrate finds that this argument is not well taken.

{¶ 51} Payments of PPD compensation under both R.C. 4123.57(A) and (B) are permissible. See *State ex rel. Maurer v. Indus. Comm.* (1989), 47 Ohio St.3d 62, 547 N.E.2d 979. In *Maurer*, the claimant sustained a work-related injury and his claim was allowed for left knee, leg, and ankle. Claimant received a 35 percent PPD award under R.C. 4123.57(A) (formerly R.C. 4123.57(B)). Later, having lost the use of his entire left leg, claimant applied for a scheduled loss award under

R.C. 4123.57(B) (formerly R.C. 4123.57(C)). After granting the award for total loss of use of his left leg, the commission deducted from the subsection (B) award the amount of compensation already paid under subsection (A).

{¶ 52} Ultimately, the matter was heard before the Supreme Court of Ohio and the commission's determination was affirmed. Specifically, the court stated:

Therefore, we hold that a claimant who has received a permanent partial disability award pursuant to former R.C. 4123.57(B) [now R.C. 4123.57(A)], for an injury which subsequently deteriorates to the point of a total loss of use of an appendage or other condition qualifying for a scheduled award, may not be awarded scheduled benefits pursuant to former R.C. 4123.57(C) [now R.C. 4123.57(B)] without an offset of the benefits received under division (B).

Id. at 66, 547 N.E.2d 979.

{¶ 53} Applying *Maurer* to the facts of this case, the magistrate finds that relator's offset argument is premature. According to *Maurer*, an offset occurs when, after receiving a PPD award under (A), the injury subsequently deteriorates to the point of a *total* loss of use of the appendage. At that time, the compensation to be paid under (B) is offset by the amount of compensation already paid under (A). That way, the same compensation is paid to a claimant who suffers an immediate total loss of an appendage as is paid to a claimant whose injury ultimately deteriorates to the point of qualifying for a total loss after an initial period of partial loss.

{¶ 54} Based on the foregoing, it is this magistrate's conclusion that the commission did abuse its discretion in granting claimant an award for the total loss of use of his left hand when there is no medical evidence to support anything other than a one-third loss of use of his index and ring fingers and a two-thirds loss of use of his middle and little fingers, and this court should issue a writ of mandamus ordering the commission to vacate its order finding a total loss of use of claimant's left hand and grant the appropriate number of weeks of compensation for each of the four fingers. Because relator's offset argument is premature, there is no offset to make and this court should deny a writ of mandamus ordering the commission to offset the awards under R.C. 4123.57(A) and (B). An offset is not appropriate until such time as claimant does sustain a total loss of use of his left hand.

/s/ Stephanie Bisca Brooks
Stephanie Bisca Brooks
Magistrate